**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THEODORE MONTGOMERY,

Plaintiff-Appellant,

v.

THE CITY OF ARDMORE; GARY L.
HENRY, officially and in his
individual capacity; FRATERNAL
ORDER OF POLICE LODGE #108,

Defendants-Appellees.

No. 01-7154

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 99-CV-374-P)**

David J. Batton, Norman, Oklahoma, for Appellant.

Stephen Brent Bahner, Fischl, Culp, McMillin, Chaffin, Bahner & Long, LLP,
Ardmore, Oklahoma, for Appellee City of Ardmore; Stefan K. Doughty, Ass't
Attorney General, Oklahoma City, Oklahoma, for Appellee Gary Henry; and
James Patrick Hunt, James R. Moore & Assocs., P.C., Oklahoma City, Oklahoma,
for Appellee Fraternal Order of Police.

Before **HENRY**, **HOLLOWAY**, and **ANDERSON**, Circuit Judges.

**HENRY**, Circuit Judge.

Theodore Montgomery appears to have let his claims get away from him. He raises some eleven propositions, as nearly as we can tell, covering violations of procedural due process and various state tort claims. The defendants, unhelpfully unfamiliar with final order law, seek to challenge the preservation of Mr. Montgomery's appeal. One of them, the Fraternal Order of Police (FOP) seeks attorneys fees. With the exception of one of Mr. Montgomery's claims, we affirm. As to the pretermination due process claim, we conclude that the City of Ardmore is not entitled to summary judgment, and we therefore vacate that judgment and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

#### 1. No confidence in the Chief

Mr. Montgomery was a fourteen-year veteran police officer for the City of Ardmore and a member of the FOP. At an April 1997 meeting, the FOP called for a vote of no confidence against the Chief of Police. The request was based on an allegation that the Chief had covered up an officer's consumption of alcoholic beverages that was a contributing factor in a fatal traffic accident. Mr. Montgomery did not join the majority of the FOP in endorsing the no confidence vote and refused to sign a letter of no confidence. Rather than participate in the

-2-

vote, Mr. Montgomery got up and left the meeting. Prior to this incident, Mr. Montgomery alleges he had no problems at work.

On April 28, 1997, an investigator for the district attorney requested to interview Mr. Montgomery concerning the incident involving the allegedly intoxicated officer. On April 29, 1997, counsel for Mr. Montgomery agreed to cooperate, but asked for information regarding the nature of Mr. Montgomery's participation. The district attorney's investigator declined to respond to this request.

On May 11, 1997, a local newspaper published a letter written by Mr. Montgomery and other officers in support of the Chief of Police. Mr. Montgomery alleges that upon the letter's publication, the atmosphere in the office worsened, and the authoring officers, including Mr. Montgomery, were ostracized. Subsequently, the Chief of Police was terminated, and John Beene was named as interim chief.

On June 23, 1997, when Mr. Montgomery returned from vacation, he was informed by Interim Chief Beene that he had a new supervisor in the investigative division and that some of his duties would be changing. His hours were no longer flexible and he was required to report at 8 a.m. Mr. Montgomery was also informed that a failure to comply with this condition might lead to the termination of his employment. According to Mr. Montgomery, before the no-confidence

vote, the investigative division had allowed its officers to work flexible hours. He also alleges, with supporting testimony from another officer, that he was the only officer subject to this new condition. Mr. Montgomery further alleges that, on June 24, his office was ransacked, and his personal belongings and photographs were destroyed. Mr. Montgomery maintains that he reported the incident to Interim Chief Beene, but that no action was taken. Mr. Montgomery also presents an affidavit from another similarly situated officer, whose complaints about damage to personal property went unanswered.

Mr. Montgomery also alleges that as a result of his refusal to participate in the no-confidence vote, he was involved in arguments and confrontations with other officers. Perhaps most seriously, in his deposition, he testified that during one call involving several likely gang members, he asked for back-up assistance from his colleagues and received none.

Mr. Montgomery also faults the FOP and its President, Milton Anthony, for the failure of his colleagues' support and for the contentious environment in the department. Another officer wrote to the FOP seeking an investigation of Mr. Anthony, based upon the unfair treatment Mr. Montgomery received. Because of this bias, Mr. Montgomery contends, the FOP would not have helped him, even had Mr. Montgomery chosen to utilize the grievance procedure.

## 2. Leave taken for stress and high blood pressure

On June 26, 1997, Mr. Montgomery began suffering from intense headaches and blurred vision. Around this time, Mr. Montgomery discovered that District Attorney Gary Henry had accused him of interfering with the criminal investigation of the former Chief of Police. Interim Chief Beene sent Mr. Montgomery home, and Mr. Montgomery sought treatment for stress and high blood pressure. Mr. Montgomery alleges that the City knew of his condition and that he sought medical treatment.

On the following day, District Attorney Henry's statements regarding Mr. Montgomery's alleged interference were published in the local newspaper. Two days later, the FOP published a response, urging Mr. Montgomery to cooperate with the investigation.

Mr. Montgomery continued to exhibit stress-related symptoms, and he left for extended medical leave on July 1, 1997. He was placed on medication and visited a counselor regularly. Mr. Montgomery had not been on similar medication during the two and a half years before his leave. On July 6, 1997, the City reclaimed its vehicle from him.

On August 8, 1997, Mr. Montgomery was informed that he would no longer be paid and that his medical insurance would be terminated. Because the City had objected to Mr. Montgomery's eligibility for receipt of long-term disability

designation of benefits, Mr. Montgomery took short-term disability leave through the police pension system. Aplt's App. vol. II, at 377 (Pre-trial order), *id.* at 744-46.

In May 1998, Mr. Montgomery contends, he met with the acting Chief, who told him that he would be welcomed back to work once he received a doctor's release. On June 23, 1998, Mr. Montgomery filed a notice of tort claim with the City. During the leave, he also filed a workers compensation case and requested compensation due to high blood pressure. The claim was denied, and on July 22, 1998, Mr. Montgomery appealed the decision.

Throughout the course of the summer of 1998, Mr. Montgomery asserts he was unable to obtain a release from his doctors and counselors to return to work. He anticipated receiving a doctor's note allowing him to return to work in September 1998.

On August 24, 1998, Mr. Montgomery telephoned then-Deputy Chief Beene and asked about returning to work in September. According to Mr. Montgomery, Deputy Chief Beene replied that the City would not let Mr. Montgomery return. He advised Mr. Montgomery to speak to the new Chief of Police, Tony Garrett, concerning his return to work.

On the same day, Mr. Montgomery testified, he contacted Chief Garrett, who told him that his rank "had been done away with," but that Mr. Montgomery

had not been terminated. Aple's Supp. App. at 157; Aplt's App. vol. II, at 377 (pre-trial order). Mr. Montgomery claims that he became first aware of his termination on February 15, 2000, when he received a copy of a personnel action form.

According to the City, on August 15, 1998, Mr. "Montgomery was terminated from his employment pursuant to Section 1116.9 of the Employee Handbook of the City of Ardmore." Aplt's App. vol. II, at 435. Section 1116.9 of the handbook provides that after receipt of long term disability benefits for 365 days, an employee is terminated. The Personnel Action Form documenting this action was dated September 28, 1998, with an effective date of August 15, 1998.

At all times relevant, the City and the FOP operated under a collective bargaining agreement (CBA), which established a grievance procedure for FOP members. However, Mr. Montgomery did not file a grievance under the CBA. He also did not seek representation from the FOP. He did leave a telephone message for FOP President Milton Anthony. According to Mr. Montgomery, "Mr. Anthony never tried to return [his] call." Aplt's App. vol. II, at 746. Mr. Montgomery never communicated directly with Mr. Anthony and made no further efforts to contact the FOP, although he did try to enlist the help of other union members.

**B. Procedural Background**

**1. District court proceedings**

On March 22, 1999, Mr. Montgomery filed this action, alleging violations of his constitutional rights under 42 U.S.C. § 1983, conspiracy to violate his constitutional rights, and state law tort claims for negligence, breach of contract, intentional infliction of emotional distress, and defamation. His complaint was dismissed for Mr. Montgomery's failure to appear at a scheduling conference. He refiled a complaint on July 23, 1999.

Mr. Montgomery attempted to file an Amended Complaint on November 30, 1999. The district court denied the request when the court discovered that Mr. Montgomery filed a different Amended Complaint than the one that accompanied the request to amend. The court determined that "this act constituted bad faith." Aplt's App. vol. II, at 420 n.1 (Dist. Ct. Order, dated Oct. 22, 2001).

On February 28, 2001, the district court granted the FOP's motion for summary judgment and Mr. Henry's motion to dismiss. The court also granted the City's first motion for summary judgment, dismissing Mr. Montgomery's § 1983 due process and state law tort claims. Because the City failed to address all of Mr. Montgomery's claims in its motion for summary judgment, the court set a deadline for filing a second motion. On October 22, 2001, the district court

granted the City's second motion for summary judgment, disposing of Mr. Montgomery's First Amendment and retaliation claims.

**2. Issues on appeal**

Mr. Montgomery now appeals these orders, raising the same claims as he did before the district court and challenging the imposition of sanctions for his attempt to file an amended complaint. In response, the defendants attack the adequacy of Mr. Montgomery's notice of appeal, because it only refers to the October 22, 2001 Order and Judgment. Defendant FOP also seeks to overturn the district court's decision not to assess attorney fees as a sanction against Mr. Montgomery. For the reasons set forth below, with the exception of Mr. Montgomery's procedural due process claim involving the denial of an adequate pretermination hearing, we reject all of the parties' arguments and affirm the decision of the district court. As to the pretermination procedural due process claim, we vacate the district court's grant of summary judgment to the City of Ardmore and remand for further proceedings consistent with this opinion.

## II. DISCUSSION

We begin by considering the adequacy of the notice of appeal. We then turn to Mr. Montgomery's contentions that the district court incorrectly dismissed his claims against the defendants and his challenge to the district court's sanction

regarding Mr. Montgomery's amended complaint. Finally, we address the FOP's belated attempt to launch a cross appeal.

### A. Notice of Appeal

On November 20, 2001, Mr. Montgomery's counsel filed a notice of appeal that stated that Mr. Montgomery "appeals to the United States Court of Appeals for the Tenth Circuit from the Order entered into in this action on the 22nd day of October, 2001, granting Defendant, City of Ardmore's Second Motion for Summary Judgment." Aplt's App. vol. II, at 782. The attached certificate of mailing indicates that each of the defendants' attorneys received a copy of the notice of appeal.

Mr. Montgomery's counsel did not specifically refer to the February 28, 2001 Order in the notice of appeal. However, as counsel should know, "a notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) (collecting cases); *see* 16A Charles A. Wright et al., Federal Practice & Procedure § 3949.4 at 72 (3d ed. 1999 & Supp. 2001) (citing cases). Accordingly, "a failure of the notice of appeal to specifically refer to a preliminary or interlocutory order does not prevent the review of that order on appeal. Having appealed from the judgment, the appellant

is free to attack any nonfinal order or ruling leading up to it." *McBride,* 281 F.3d at 1104 (quoting 20 Moore's Federal Practice ¶ 303.21[3][c][iii] (3d ed. 2001)).

Because the February 28, 2001 order dismissed only certain of Mr. Montgomery's claims, "and thus adjudicated fewer than all the claims and liabilities of all the parties, it was not a final appealable order and would have required certification under FED. R. CIV. P. 54(B) to be immediately appealable." *McBride,* 281 F.3d at 1104. However, "[a]s an earlier interlocutory order, the order of dismissal merged into the final judgment. The notice of appeal from the [October 23, 2001] order and judgment was, therefore, sufficient to support review of the [February 28, 2001] order [and judgment]." *Id.* Accordingly, we proceed to the merits of Mr. Montgomery's appeal.

**B. Mr. Montgomery's Claims**

Mr. Montgomery contends that the district court erred when it granted summary judgment to each defendant, and when it granted Mr. Henry's motion to dismiss. He argues that the City (1) deprived him of procedural due process when it constructively discharged him without notice when he was on disability leave; (2) retaliated against him for the exercise of his First Amendment right to free speech; (3) abridged his First Amendment right to freedom of association; (4) engaged in civil conspiracy to deprive him of a protected right; and (5) acted

negligently by failing to train its officers and failed to provide a safe work environment.[1]

He next contends that the FOP conspired with the City to make his workplace unbearable and to constructively terminate Mr. Montgomery from his position. He suggests that the FOP engaged in arbitrary and discriminatory conduct against him. He also alleges that the FOP's conduct amounted to intentional infliction of emotional distress.

As to Mr. Henry, Mr. Montgomery argues that he made defamatory statements to the press, and that Mr. Henry was not immune from suit. Mr. Montgomery also challenges the district court's dismissal of his state tort claims. Lastly, Mr. Montgomery challenges certain of the district court's discovery rulings, including its ruling denying his motion to file an amended complaint.

## 1. Standard of Review

We review a grant of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). On summary judgment, issues concerning all other elements of the claim become immaterial if the plaintiff does not come forward with sufficient evidence on any essential

---

[1] Mr. Montgomery also dedicates a section of his brief to his ADA claims and to various defamation and third party interference claims. Because these claims were raised in Mr. Montgomery's amended complaint, which we hold was properly rejected by the district court, we do not address them here.

element of the cause of action. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

We also engage in de novo review of the district court's grant of a FED. R. CIV. P. 12(b)(6) motion to dismiss, and apply the same standard as the district court. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). We accept as true "all well-pleaded factual allegations," viewing them "in the light most favorable to the nonmoving party." *Id.* Such a motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks omitted).

### 2. Claims Against the City

#### a. Pretermination Procedural Due Process

Mr. Montgomery alleges that he possessed a constitutionally-protected property interest in his employment and that he received an inadequate level of due process before the City discharged him. The district court rejected this claim, reasoning that Mr. Montgomery "received [constitutionally adequate] pre-termination due process through his conversations with [Deputy Chief] Beene and [Chief] Garrett wherein [he] was informed of his effective termination." Aplt's App. vol. II, at 422. Although it concedes that Mr. Montgomery had a protected property interest in his employment, the City urges us to adopt the district court's

-13-

position that he received adequate pretermination process. In addition to Mr. Montgomery's conversations with Deputy Chief Beene and Chief Garrett on August 24, 1998, the City relies upon Mr. Montgomery's failure to seek a post-termination hearing pursuant to the grievance procedures set forth in the CBA.

In order to prevail on a § 1983 claim, a plaintiff must establish that the defendants acted under color of state law and that the defendants' actions deprived the plaintiff of some federal right. *See Sutton*, 173 F.3d at 1237. "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) (internal quotation marks omitted).

Here, there is no dispute that the City acted under color of state law and that Mr. Montgomery possessed a protected property interest in his employment. Mr. Montgomery's pretermination procedural due process claim thus turns on the appropriate level of process to which he was entitled.

As a general rule, the Due Process Clause requires "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted). The purpose of the

pretermination hearing is to serve as "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46. Thus, "[t]he pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 545.

In particular, a pretermination hearing requires: (1) "oral or written notice [to the employee] of the charges against him; (2) "an explanation of the employer's evidence and [3] an opportunity [for the employee] to present his side of the story." *Id.* at 546; *see also Langley v. Adams County*, 987 F.2d 1473, 1480 (10th Cir. 1993) ("Due process requires that plaintiff have had an opportunity to be heard at a meaningful time and in a meaningful manner before termination. . . . 'This requirement includes three elements: 1) an impartial tribunal; 2) notice of charges given a reasonable time before the hearing; and 3) a pretermination hearing, except in emergency situations.'") (quoting *Patrick v. Miller*, 953 F.2d 1240, 1244 (10th Cir. 1992)).

In the instant case, the record here does not establish that Mr. Montgomery's August 24, 1998 telephone conversations with Deputy Chief Beene and Chief Garrett provided him with an adequate pretermination hearing under *Loudermill*. Viewed in the light most favorable to Mr. Montgomery, the evidence before us indicates that Mr. Montgomery had already been terminated when he talked to Deputy Chief Beene and Chief Garrett on that day. In particular, when

asked by Mr. Montgomery about the status of his job, Deputy Chief Beene told him that "they're not going to let you come back." Aple's Supp. App. at 157. Chief Garrett stated that Mr. Montgomery's rank "had been done away with" and that he "was not going to be able to return to work." *Id.* at 158.

The written notice of Mr. Montgomery's termination provides further support for this view. As we have noted, the written notice is dated September 28, 1998, but describes the effective date of termination as August 15, 1998. Moreover, in its summary judgment brief, the City itself contends that "*on August 15, 1998 [Mr]. Montgomery was terminated from his employment.*" Aplt's App. vol. II, at 435 (emphasis added).

In rejecting Mr. Montgomery's pretermination due process claim, the district court appears not to have fully considered the timing of the required hearing. The court stated that Mr. Montgomery "received pre-termination due process through his conversations with [Deputy Chief] Beene and [Chief Garrett] wherein [Mr. Montgomery] *was informed of his effective termination.*" *Id.* at 422 (emphasis added). The court then cited *Loudermill* for the proposition that "[a] terminated employee with a protected interest must receive notice of an adverse employment action taken against him." *Id.* However, *Loudermill* requires the employer to provide–*before the termination*–notice of the charges, a summary of

the employer's evidence, and an opportunity to respond. *See Hulen v. Yates*, 322

F.3d 1229, 1247 (10th Cir. 2003) (stating that, in *Loudermill*, "the Court held that

constitutional due process required the school board to provide a hearing *before*

*terminating a tenured school employee*) (emphasis added); *Powell v. Mikulecky*,

891 F.2d 1454, 1458 (10th Cir. 1989) ("[T]he *Loudermill* Court held that a

'hearing' was necessary *prior to* termination of a public employee.") (emphasis

added).

Moreover, there is no indication in the record that the conversations with

Deputy Chief Beene and Chief Garrett satisfied the other requirements of

pretermination hearings. Apparently Mr. Montgomery did not receive either a

summary of the City's reasons for terminating his employment or an opportunity

to respond to the City's charges.

Finally, even though, under the CBA there were post-termination grievance

proceedings available to Mr. Montgomery, we are not convinced by the City's

argument that "'[Mr. Montgomery's] decision to forego [post-termination

remedies] does not require that the federal court provide an alternative remedy.'"

City's Response Br. at 14 (quoting *Tansy v. Mondragon*, No. 94-2152, 1995 WL

216926, at **4 (10th Cir. Apr. 12, 1995) (unpublished disposition)).[2]  Post-

_____

[2] We remind counsel for the City that under our rules, citation to
unpublished order and judgments is "disfavored." 10th Cir. R. 36.3. In its brief,
the City neither noted that the order and judgment was unpublished, nor  attached
(continued...)

termination remedies, no matter how elaborate, do not relieve the employer of providing the *minimal* pre-termination procedural protections noted in *Loudermill. See West v. Grand County*, 967 F.2d 362, 368 (10th Cir. 1992) ("A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of *Loudermill*."); *Seibert v. State of Okla., ex rel. Univ. of Okla. Health Scis. Ctr.*, 867 F.2d 591, 596 (10th Cir. 1989) (noting that the plaintiff did not waive his right to a pre-termination hearing by failing to pursue post-termination remedies).

We therefore conclude that the City is not entitled to summary judgment on Mr. Montgomery's pretermination due process claim and that the claim must be remanded to the district court for further proceedings. Because a remand is required, we note briefly the type of damages generally available for a violation of procedural due process.

Generally, damages for procedural due process violations may include damages arising out of the termination of employment "if there is a causal connection between the termination and the failure to provide a hearing." *Alston v. King,* 231 F.3d 383, 386 (7th Cir. 2000) (explaining *Carey v. Piphus* 435 U.S. 247 (1978)). However, if the employer can establish that "the employee would have been terminated even if a proper hearing had been given, the terminated

---

[2](...continued)
a copy of the order and judgment, both in violation of 10TH CIR. R. 36.3(C).

-18-

employee cannot receive damages stemming from the termination in an action for a procedural due process violation." *Id.*; *see McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1213 (10th Cir. 2000) ("The [defendant] must establish, by a preponderance of the evidence, that it would have reached the same termination decision in any event. Unless the defendant carries that burden, the plaintiff is entitled to recover damages for the injury caused by the defendant's adverse action."); *Dill v. City of Edmond*, 155 F.3d 1193, 1209 (10th Cir. 1998) (plaintiff entitled to compensatory damages for adverse action when defendant failed to establish adverse action would have occurred even if due process had been provided)). However, even if an employer satisfies this burden, "the employee may still obtain damages for emotional distress attributable to the deficiencies in procedure if the employee can convince the trier of fact that the distress is attributable to the denial of procedural due process itself rather than to the justified termination." *Alston,* 231 F.3d at 386.

From this record, it appears that there is evidence that the City would have terminated Mr. Montgomery's employment even if it had provided him with the required pretermination hearing. However, we leave the resolution of that and other questions related to Mr. Montgomery's pretermination due process claim to the district court.

**b. Post-deprivation Process**

We must also examine the adequacy of the post-deprivation process that

Mr. Montgomery received. *See Benavidez v. Albuquerque*, 101 F.3d 620, 627

(10th Cir. 1996) ("Because it is followed by post-termination proceedings, the

pretermination hearing is not meant to resolve definitively the propriety of the

discharge, but only to determine whether there are reasonable grounds to believe

the charges are true and the action is correct."). "When the pretermination

process offers little or no opportunity for the employee to present his side of the

case, the procedures in the post-termination hearing become much more

important." *Id.* at 626.

Turning to the adequacy of the post-termination procedures then, we

recognize that pursuant to *Benavidez,* "it may be improper to place the burden of

proof on the employee when the employee has been offered 'little or no

opportunity . . . to present his side of the case'" in the pre-termination process.

*Hulen v. Yates,* 322 F.3d 1229, 1249 (10th Cir. 2003) (quoting *Benavidez*, 101

F.3d at 626). Such is the case here. The burden rests with the City to establish

the adequacy of the post-termination procedures.

We hold that the City's post-termination procedures were adequate. The

CBA provided Mr. Montgomery with the opportunity to challenge his termination

in a more detailed fashion. We have held that a CBA's grievance procedure can

-20-

provide a plaintiff with "an adequate post-deprivation remedy for Defendants' violation of the CBA." *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1256 (10th Cir. 1998). Here, there is no doubt that Mr. Montgomery forewent any opportunity for a post-termination proceeding under the collective bargaining agreement. Therefore, we conclude that Mr. Montgomery was provided with adequate post-termination procedures.

### c. Retaliation and Harassment as a Result of the Exercise of Freedom of Speech

Mr. Montgomery appears to challenge the district court's grant of summary judgment to the City on his claims regarding "retaliation, hostile work environment, and First Amendment violations." Aplt's Br. at 40. Other than generic references to a Second Circuit case, counsel provides no caselaw supporting these arguments.

Mr. Montgomery identifies his protected speech as (1) co-authoring the May 11, 1997 letter to the editor of Ardmore's local newspaper voicing support of Chief Snelson; (2) being a member of the FOP; and (3) abstaining from the vote of no-confidence. The letter encouraged readers to look at the "many changes and improvements" Chief Snelson had accomplished during his tenure. Aplt's App. vol. II, at 531. The letter encouraged the public to "allow[] [the chief] . . . to tell his side of the story [so that] we will have a complete picture upon which to make an informed decision." *Id.*

To evaluate Mr. Montgomery's claim, we employ the four-part balancing test for determining whether a public employer's actions impermissibly infringe on free speech rights of employees as set out in *Pickering v. Bd. of Education*, 391 U.S. 563 (1968). We balance the public employee's interest in commenting upon matters of public concern against the government's interest in "promoting the efficiency of the public services it performs through its employees." *Id.* at 568.

> First, the court must decide whether the speech at issue touches on a matter of public concern. If it does, the court must balance the interest of the employee in making the statement against the employer's interest in promoting the efficiency of the public services it performs through its employees. Third, if the preceding prerequisites are met, the speech is protected, and plaintiff must show h[is] expression was a motivating factor in the detrimental employment decision. Finally, if the plaintiff sustains this burden, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech.

*Schalk v. Gallemore*, 906 F.2d 491, 494-95 (10th Cir. 1990) (internal quotation marks and citations omitted).

Thus, "[s]peech that pertains to a public agency's discharging its governmental responsibilities ordinarily will be regarded as speech on a matter of public concern." *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996) (internal quotation marks omitted); *see Connick v. Myers*, 461 U.S. 138, 146 (1983) (holding that speech on a matter of public concern is that which may be "fairly considered as relating to any matter of political, social, or other

-22-

concern to the community"); *Wilson v. City of Littleton*, 732 F.2d 765, 768 (10th Cir. 1984) (holding "the speech must 'sufficiently inform the issue as to be helpful to the public in evaluating the conduct of [the] government'"). In contrast, "speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." *Id.*

Here, by its voicing support of Chief Snelson during a time of public scrutiny and a criminal investigation, the letter to the editor addresses a matter of public concern. However, we agree with the district court that "the record is devoid of . . . a connection," Aplt's App. vol. II, at 773, between the publication of the letter and termination of Mr. Montgomery's employment or any other adverse employment action. In particular, we note that Mr. Montgomery's employment was terminated more than a year after the letter was published, and Mr. Montgomery has offered no evidence that the reasons stated for the termination–the expiration of his long-term disability benefits–was pretextual.

Similarly, we agree with the district court that Mr. Montgomery has presented no evidence that the City took action against him because of his membership in the FOP. Finally, Mr. Montgomery cannot show that the City took an adverse employment action against him because of not voting in the no-confidence vote.

Accordingly, we agree with the district court that the City is entitled to summary judgment on this First Amendment retaliation claim.

### d. Freedom of Association Claim

Mr. Montgomery's next claim presumably concerns the City's acts regarding his association with the FOP. Mr. Montgomery presents no evidence that his ability to engage in FOP activity was curtailed, and we agree with the district court that we are "unable to find that [Mr. Montgomery's] right of association was restricted through the City's actions." Aplt's App. vol. II, at 775.

### e. Civil Conspiracy Claim

Mr. Montgomery also raises a civil conspiracy claim against the City and the FOP. He claims that together they decided to "publicly discredit, harass, annoy, cause harm, deny benefits[,] and terminate his employment." Aplt's Br. at 5. We agree with the district court that Mr. Montgomery has failed to state a claim for civil conspiracy under § 1983 because he did not "allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). Furthermore, he "d[id] not identify any of the alleged participants in the alleged conspiracy or the manner in which the conspiracy operated." Aplt's App. vol. II, at 777. Mr. Montgomery merely alleged many unlawful acts by various defendants and stated, without any specific facts evincing an agreement among the various defendants,

that they conspired against him. The district court appropriately granted summary judgment on the civil conspiracy claim.

### f. Negligence Claim

The law in Oklahoma requires that an employer provide a reasonably safe place in which to work. *McMillin v. Barton-Robison Convoy Co.*, 78 P.2d 789, 790 (Okla. 1938). To state a cause of action in negligence against an employer an employee must allege: (1) a duty by the employer to protect the employee from the danger; (2) a failure by the employer to perform that duty; and (3) an injury which is proximately caused by that failure. *Sears, Roebuck & Co. v. Skeen*, 248 P.2d 582, 585 (Okla. 1952). Here, Mr. Montgomery alleges that the City was negligent in its hiring, retention, training, and control of the officers it employs.

The district court rejected this claim by noting that the only physical harm was the ransacking of the office. This may well have caused disruption, and created an upsetting atmosphere. However, we agree that Mr. Montgomery has presented no evidence that "the City was negligent in the manner in which its employees acted toward [him], in the investigation, discipline, hiring, retention or promotion of supervisory personnel and in its actions toward [him]." Aplt's App. vol. II, at 424.

### 3. Claims Against the FOP

Mr. Montgomery appears to have raised a breach of the duty of representation claim against the FOP, asserting that the Union (1) failed to ensure that Mr. Montgomery received due process, (2) failed to ensure his safety, (3) failed to uphold the CBA's covenant of good faith and fair dealing through its failure to take any corrective action in the aftermath of the continued violation of Mr. Montgomery's constitutional rights; and, (4) through the above actions intentionally caused severe emotional distress through its failure to uphold its duties under the CBA.

The district court rejected Mr. Montgomery's claims finding that (a) the claims allege the breach of the duty of fair representation and are time-barred; (b) the FOP is not a state actor acting under the color of law; and (c) Mr. Montgomery's state law claims fail for the same reasons they failed against the City.

### a. Breach of the Duty of Fair Representation

We agree with the district court that the bulk of Mr. Montgomery's claims allege the breach of the duty of fair representation. "Where a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations." *Thomas v. Nat'l Ass'n of Letter Carriers,* 225 F.3d 1149, 1158 (10th Cir. 2000). Accordingly, these claims are preempted by federal labor law.

-26-

In support of his argument that his claims are not preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), Mr. Montgomery relies on *Marshall v. TRW, Inc.,* 900 F.2d 1517 (10th Cir. 1990). In *Marshall*, we held that plaintiff's state tort claim for retaliatory discharge for filing a workers compensation claim was not preempted by the LMRA, although the employer argued that the plaintiff was terminated pursuant to a "just cause" clause under the collective bargaining agreement. The plaintiff responded that the employer's reliance on the "just cause" provision was pretextual. We held that a court could determine whether the plaintiff was terminated in retaliation for a workers compensation filing without interpreting the "just cause" provision. *Id.* at 1521. Because the plaintiff's claim turned on whether the employer's motivation for terminating the plaintiff was the rule violation or retaliation for engaging in protected activity, we concluded that the claim was not preempted by the LMRA,

Mr. Montgomery suggests that because he does not reference the CBA and because no interpretation of the CBA is needed, that the CBA is not at issue. He maintains that he has challenged the FOP's conduct and motivation, but not the CBA. We disagree with Mr. Montgomery's narrow characterization of his claims. Unlike the claims of the plaintiff in *Marshall*, Mr. Montgomery's claims require us to consider the provisions of the CBA, particularly its covenant of good faith and fair dealing. In order to assess any arbitrary or discriminatory treatment by

the FOP, we must consider the terms of the CBA. Mr. Montgomery's claims are thus governed by the LMRA.

Under the LMRA, "a union breaches its duty [of fair representation,] when its conduct is arbitrary, discriminatory, or in bad faith." *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979) (internal quotation marks omitted). Mr. Montgomery cannot advance such a claim without demonstrating that he filed his claim within six months of the alleged breach, *see Hagerman v. United Transp. Union,* 281 F.3d 1189, 1197 (10th Cir. 2002) ("A six-month statute of limitations applies to duty of fair representation claims."), and that he sought the FOP's aid. *See Volkman v. United Trans. Union*, 73 F.3d 1047, 1054 (10th Cir. 1996).

As to the timeliness of Mr. Montgomery's action as noted above, Chief Garrett informed Mr. Montgomery that his position had been "done away with" during the August 24, 1998 telephone call. However, the Personnel Action Form documenting this action was dated September 28, 1998, with an effective date of August 15, 1998. Aple's Supp. App. at 157. Mr. Montgomery filed suit on March 22, 1999. Viewing the facts and inferences in the light most favorable to Mr. Montgomery, the September 28, 1998 date suggests that Mr. Montgomery's suit was timely.

Nevertheless, there is another obstacle to Mr. Montgomery's fair representation claim. "An employee can bring suit under § 301 of the LMRA

only if he or she has exhausted the contractual remedies provided in the collective bargaining agreements." *Aguinaga v. United Food & Comm'l Workers Int'l Union,* 993 F.2d 1463, 1471 (10th Cir. 1993). Although Mr. Montgomery contends that he left one telephone message for the FOP's President, he has presented no colorable evidence that he exhausted the CBA's grievance procedures.

Although there is an exception to the exhaustion requirement when an employee proves "that the union breached its duty of fair representation in its response to an employer's contract breach," *id.,* Mr. Montgomery has presented no evidence in support of this proposition. His conclusory assertions that the FOP was colluding with the City to deny him his constitutionally protected rights are not sufficient to establish the exception to the exhaustion requirement.

Thus, the district court properly granted summary judgment on these claims.

### b. The FOP is not a State Actor in this Case

To the extent Mr. Montgomery attempts to advance his claims under § 1983, he must demonstrate that the FOP is acting "under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). Labor unions such as the FOP are generally not state actors, but Mr. Montgomery argues that the FOP conspired with the City to take an adverse employment action against him. A private actor acts under color of state law when the private actor "is a willful participant in

joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

We agree with the FOP that Mr. Montgomery's conclusory allegations are insufficient to state a § 1983 claim. There is no evidence that the FOP acted in concert with the City. As established above, there is no evidence the City committed an unconstitutional act, nor are there any specific factual allegations suggesting that FOP conspired with the City. *Cf. Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 880-81 (2d Cir. 1988) (holding that complaint alleged sufficient facts to support conclusion that private-actor PBA had acted under color of state law, where complaint alleged, inter alia, that PBA had hired private investigators and placed plaintiff under surveillance with knowledge and consent of a state-actor, the New York City Police Department). Indeed, we note, as did the district court, that Mr. Montgomery's conclusory allegations of conspiracy ring especially hollow in light of the adversarial relationship between the City and the FOP.

### c. Intentional Infliction of Emotional Distress

Mr. Montgomery suggests that the FOP's actions amounted to intentional infliction of emotional distress. "Under Oklahoma law, a claim for intentional infliction of emotional distress requires a showing of conduct

> so outrageous in character, and so extreme in degree, as to
> be beyond all possible bounds of decency, and to be

-30-

> regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1218 (10th Cir. 2003) (quoting *Frank v. Mayberry*, 985 P.2d 773, 776 (Okla. 1999) (quoting Restatement (Second) of Torts § 46, cmt. d)).  We agree with the district court that "[n]o circumstance alleged by Plaintiff in this action remotely approaches the extreme conduct required to prevail on an intentional infliction claim."  Rec. vol. II, at 424.

### 4. Claims Against District Attorney Henry

The district court dismissed all of Mr. Montgomery's federal and state law claims against Gary Henry in his official and individual capacity.  On appeal, Mr. Montgomery appears to only challenge the dismissal of the state law defamation claim.

Mr. Montgomery's state law claim appears to stem from Mr. Henry's statements to the press that Mr. Montgomery was "withholding information in a criminal investigation" and that his "refusal to interview could be viewed as an attempt to obstruct this investigation."  Aplt's App. vol. II, at 532-533.  Under Oklahoma law, public officials such as Mr. Henry are immune from tort liability for actions taken within the scope of their employment.  *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1201 (10th Cir. 2000) (citing Okla. Stat. Ann.

§ 153).  Here, the acts complained of  were a part of the district attorney's investigation and an intrinsic part of his prosecutorial function.   We hold that Mr. Henry's statements to the press were within the scope of his employment and that Mr. Henry is thus immune from the state law tort claims.  Accordingly, the district court properly dismissed the state law claims against Mr. Henry.

### 5. Imposition of Sanctions Against Mr. Montgomery

Mr. Montgomery next challenges the district court's imposition of sanctions for his counsel's allegedly inadvertent attempt to file an amended complaint that differed from the one attached to the motion for leave to file it.

"We review for abuse of discretion all aspects of a trial court's imposition of sanctions for rules violations." *Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1169 (10th Cir. 2003).  Rule 11 applies to the presentation of "pleading[s], written motion[s], or other paper[s]" to the court.  Fed. R. Civ. P. 11(b).  Mr. Montgomery's counsel suggests that his unintentional filing of a draft amended complaint was a "'mistake[]'" that could have happened "in any office." Aplt's Br. at 59.

Apparently, the district court, in an order dated Feb. 27, 2001, found that Mr. Montgomery's and/or his counsel "was deliberately misleading the Court and Defendants as to the intended amendment. . . .  Plaintiff's bad faith in the manner in which he sought the amendment precludes permitting the Amended Complaint

to stand." Aple Henry's Br. at 27 (quoting Order, dated Feb. 27, 2001). The district court received for filing an amended complaint that differed materially from the one originally attached to the motion to amend. The district court did not abuse its discretion when it struck the amended complaint and made a finding of bad faith.

In addition, we note with particular disapproval that the parties failed to attach the district court's February 27, 2001 order to the briefs submitted in this court. *See* 10TH CIR. R. 28.2(A) (requiring appellant's brief to include, among other things, "copies of all pertinent written findings, conclusions, opinions, or orders of a district judge" even though they are also included in the appendix); *see also* 10th Cir. R. 28.2(B) (requiring appellee's brief to include "all the rulings required by (A)," in the event that appellant's brief fails to include them). Even more distressing is the appellant's counsel's apparent failure to include the order in the appendix in violation of 10th Cir. R. 10.3(C), or, at the very least, to cite the record so that we might review the order.

### C. The FOP's Belated Claim

The FOP claims the district court abused its discretion when it refused to award attorneys' fees as a sanction against Mr. Montgomery for filing unnecessary litigation. The FOP makes this argument under Fed. R. App. P. 4(a)(3), and acknowledges that it has not filed a cross-appeal in this case.

Fed. R. App. P. 4(a)(3) provides:

-33-

Rule 4. Appeal as of Right--When Taken

(3) Multiple Appeals. If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

Because the FOP alleges it was not notified it would have to file an answer in this case until September 30, 2003, it somehow claims that Fed. R. App. P. 4 did not affect its status until then. *See* FOP's Br. at 15 n.1.

We have noted above that the certificate of service attached to the Notice of Appeal included all of the defendants. In addition, on March 22, 2002, the FOP filed a response to Mr. Montgomery's motion to add parties on appeal. We declared the motion to add parties moot and ordered the parties to file response briefs on September 30, 2003. The FOP was clearly on notice of the appeal.

Because the FOP failed to file a cross-appeal, we do not consider its request for this Court to decide whether Mr. Montgomery should have been awarded attorneys' fees. It is well-recognized that an appellee who has failed to file a cross-appeal cannot "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Burgo v. Gen. Dynamics Corp.*, 122 F.3d 140, 145 (2d Cir. 1997) (quoting *Morley Constr. Co. v. Maryland Cas. Co.*, 300 U.S. 185, 191 (1937) (Cardozo, J.)); *see Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1286 (2d Cir. 1994)

-34-

("Although an appellee who has not cross-appealed may urge alternative grounds for affirmance [of the judgment], it may not seek to enlarge its rights under the judgment by enlarging the amount of damages or scope of equitable relief.").

## III. CONCLUSION

For the reasons stated above, we VACATE the district court's grant of summary judgment on Mr. Montgomery's pretermination due process claim and REMAND for further proceedings consistent with this opinion.

As to the remaining claims, we AFFIRM the district court's grant of summary judgment to the City and to the FOP; we AFFIRM the grant of Mr. Henry's motion to dismiss; we AFFIRM the district court's sanction of Mr. Montgomery, and we DISMISS the FOP's appeal of the denial of its motion for sanctions.