**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**July 11, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

MICHAEL S. HARRELL, an individual,

    Plaintiff - Appellee,

and

BILLY D. "RUSTY" RHOADES;
MEGAN L. SIMPSON,

    Plaintiffs,

v.

KEVIN STITT, an individual; CHIP
KEATING, an individual; JASON
NELSON, an individual,

    Defendants - Appellants,

and

THE STATE OF OKLAHOMA, ex rel.
GOVERNOR KEVIN STITT; THE
STATE OF OKLAHOMA, ex rel. THE
DEPARTMENT OF PUBLIC SAFETY,

    Defendants.

No. 23-6048
(D.C. No. 5:20-CV-00761-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

_____

Michael Harrell served as chief of the Oklahoma Highway Patrol for under two years. After his employment ended, Harrell brought this action under 42 U.S.C. § 1983 against defendants Kevin Stitt, the governor of Oklahoma; Chip Keating, the former Oklahoma secretary of public safety; and Jason Nelson, the former Oklahoma deputy secretary of public safety. Harrell alleged that defendants deprived him of a constitutionally protected property interest in continued employment without due process of law. The district court denied defendants' motion for summary judgment based on qualified immunity, and defendants appeal. We conclude that Harrell cannot establish a procedural-due-process violation because he voluntarily elected to retire from the highway patrol. We therefore reverse the district court's denial of qualified immunity and remand with directions to enter summary judgment in defendants' favor.

## Background

From late 2017 until 2019, Harrell served as chief of the Highway Patrol Division of the Oklahoma Department of Public Safety (DPS). In the summer of 2018, Harrell provided Trooper Brian Orr with detailed information about the topics that would be covered on an upcoming promotional exam. Harrell gave no such assistance to any other trooper taking the exam, and DPS commissioner Billy Rhoades was present during Harrell's conversation with Orr. Orr later told Trooper Troy German about how Harrell had helped him. German recorded his conversation with Orr and then confronted Rhoades about Orr's assertion.

2

After this confrontation, Harrell, Rhoades, and DPS general counsel Megan Simpson asked the Oklahoma County district attorney, David Prater, to file blackmail charges against German. Prater declined to bring such charges because he believed that their blackmail allegations were unfounded and that they had lied to him about Rhoades's interactions with German. Undeterred, Harrell, Rhoades, and Simpson then took their allegations to the state attorney general, who later indicted German for blackmail. When Prater learned about the charges, he offered to testify on German's behalf at the preliminary hearing, but the attorney general dismissed the charges before Prater could testify. In August 2019, after the charges were dismissed, German sued Harrell, Rhoades, Simpson, and Orr for malicious prosecution and abuse of process.

After German filed suit, Prater spoke with Nelson over the phone about the testing controversy and its aftermath. During the call, Prater explained that Harrell had admitted to providing Orr with assistance on the promotional exam. Prater also said he believed that the blackmail allegations were unfounded; that Harrell, Rhoades, and Simpson had lied to him about German's conduct; and that the three officials should be investigated for their own conduct. Nelson in turn relayed the information he learned from Prater to Keating, who then shared his concerns about the situation with the governor's staff.

Shortly thereafter, in early September 2019, Stitt ordered the removal of Harrell, Rhoades, and Simpson—all unclassified, at-will employees.[1] To this end, Stitt signed affidavits stating that they were incapable of effectively leading the department. Stitt then delegated to Nelson the authority to carry out the resignation, retirement, or termination of Harrell, Rhoades, and Simpson. Following these instructions, Nelson called the three officials and informed each official that they could choose between resignation, retirement (if eligible), and termination. As relevant here, when Nelson asked Harrell during the call if he "kn[e]w at this time what [he] would prefer to do," Harrell responded that he would retire. App. vol. 2, 480. At his deposition, Harrell testified that he "took the least intrusive of the three options that were given [to him], knowing full well that [he] had the statutory ability" under Oklahoma law to return to his former classified position as a major in the highway patrol, though defendants "never offered that." App. vol. 4, 1007–08.

Two days after his call with Nelson, Harrell confirmed his retirement in writing and selected November 30, 2019, as the effective date of his retirement. Harrell "request[ed] to use terminal leave through that date" and "to be paid for any unused annual leave at that time." App. vol. 2, 489. Harrell then applied for monthly

---

[1] Under the governing Oklahoma statute, "employees are designated as being in either 'classified' or 'unclassified' service." *Trant v. Oklahoma*, 426 F. App'x 653, 662 (10th Cir. 2011) (quoting *McCrady v. Okla. Dep't of Pub. Safety*, 122 P.3d 473, 475 (Okla. 2005)). Classified employees are "protected by detailed rules and procedures concerning all aspects of the employment relationship, including the right to appeal from . . . suspensions[] and involuntary discharge without just cause." *Id.* (ellipsis in original) (quoting *McCrady*, 122 P.3d at 475). Unclassified employees, by contrast, serve at will and have no right to continued employment. *Id.*

retirement benefits and requested to begin receiving such benefits in December 2019; the Oklahoma Law Enforcement Retirement System granted his request. In the first three years of his retirement, Harrell received more than $370,000 in retirement benefits.

In July 2020, Harrell filed this action in state court, alleging a procedural-due-process claim against Stitt, Keating, and Nelson in their individual capacities.[2] Harrell asserted that they deprived him of a constitutionally protected property interest in continued employment with the highway patrol without due process of law. As support for his asserted property interest, Harrell invoked an Oklahoma statute providing the highway-patrol chief with "a right of return to the highest previously held classified commissioned position within the Oklahoma Highway Patrol . . . without any loss of rights, privileges[,] or benefits immediately upon completion of the duties in the unclassified commissioned position." Okla. Stat. tit. 47, § 2-105(A)(1) (2017) (amended 2022).

Defendants removed the action to federal court and, following discovery, moved for summary judgment based in part on qualified immunity. The district court denied the summary-judgment motion. The district court first concluded that "it was clearly established at the time of . . . Harrell's separation that he had a statutory right

---

[2] The complaint also named Rhoades and Simpson as plaintiffs, and it asserted additional claims against various defendants for due-process violations, wrongful termination, and tortious interference with an employment contract. The district court dismissed these due-process and wrongful-termination claims at the motion-to-dismiss stage, and it later dismissed the tortious-interference claims at summary judgment. Those claims are not at issue in this appeal.

of reversion[,] thereby creating a property interest in his continued employment" with the highway patrol. App. vol. 6, 1637. The district court then explained that whether defendants deprived Harrell of that interest without due process turned on the voluntariness of his decision to retire. *See Parker v. Bd. of Regents*, 981 F.2d 1159, 1162 (10th Cir. 1992) (holding that if employee "resigned of [their] own free will," then they "voluntarily relinquished [their] property interest and [were] not deprived of [their] property interest without due process"). And it determined a reasonable jury could find that Harrell's decision to retire was involuntary under the constructive-discharge test set out in *Parker*. The district court thus rejected defendants' qualified-immunity defense.

Defendants now appeal.

**Analysis**

**I.    Appellate Jurisdiction**

Before addressing the merits of this interlocutory appeal, we must first ensure that we have jurisdiction over it. Ordinarily, we lack jurisdiction to review orders denying summary judgment. *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023). "[T]he denial of qualified immunity to a public official," however, is generally "immediately appealable." *Id.* (quoting *Cox v. Glanz*, 800 F.3d 1231, 1242 (10th Cir. 2015)). And we review such a denial de novo. *Id.* But in so doing, we must usually accept as true the facts the district court determined a reasonable jury could find at trial and focus only on "abstract issues of law relating to qualified immunity." *Paugh v. Uintah County*, 47 F.4th 1139, 1152–53 (10th Cir. 2022) (quoting *Behrens v.*

6

*Pelletier*, 516 U.S. 299, 313 (1996)).

Invoking this jurisdictional limitation, Harrell argues we may not review the district court's holding that a genuine issue of material fact exists as to whether his retirement was involuntary. Harrell is mistaken. To be sure, we should take as true the facts the district court held a reasonable jury could find. *See id.* But it is our responsibility to say whether those facts, along with the undisputed facts, "fall in or out of legal bounds"—that is, "whether they are or are not enough as a matter of law to permit a reasonable jury to issue a verdict for the plaintiff under the terms of the governing legal test." *Walton v. Powell*, 821 F.3d 1204, 1210 (10th Cir. 2016) (Gorsuch, J.); *see also Paugh*, 47 F.4th at 1153 (explaining that on interlocutory appeal of qualified immunity, we may consider "whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation" (quoting *Finch v. Rapp*, 38 F.4th 1234, 1240–41 (10th Cir. 2022))). And here, defendants ask us to do just that: decide whether such facts are sufficient as a matter of law to permit a favorable judgment on the voluntariness of Harrell's decision to retire under the *Parker* test, which "is determinative of whether qualified immunity would bar this action." *Parker*, 981 F.2d at 1162; *see also id.* at 1162–63 (explaining that there is no constitutional "violation of due process" if plaintiff voluntarily "chose to end [their] employment without a hearing and not to avail [themselves] of the available due[-]process procedures"). Because this is an abstract legal issue, we have jurisdiction to address it. *See id.* at 1162–63 (reviewing district court's holding that reasonable jury could find plaintiff's resignation was involuntary in appeal from

summary-judgment denial based on qualified immunity); *Walton*, 821 F.3d at 1207–10 (rejecting argument that we lacked jurisdiction to review "district court's holding that a reasonable jury could find [plaintiff's] dismissal was the result of (caused by) her political affiliation" in appeal from summary-judgment denial based on qualified immunity).

## II.    Merits

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome a qualified-immunity defense, a plaintiff must establish that (1) "the defendant violated a constitutional or statutory right" and (2) "the right was clearly established at the time of the defendant's conduct." *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022). Courts may address these two prongs in any order, and "if the plaintiff fails to establish either prong . . . , the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016). Here, we begin and end with the first prong: whether defendants violated Harrell's rights to procedural due process.

To "assess whether an individual was denied procedural due process," we engage in a familiar "two-step inquiry." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004)). At the first step, we ask whether "the individual possess[ed] a protected

8

interest such that the due[-]process protections were applicable." *Id.* (quoting *Montgomery*, 365 F.3d at 935). "A public employee has a property interest in his continued employment where 'state or local law creates a sufficient expectancy of continued employment.'" *McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (quoting *Driggins v. City of Oklahoma City*, 954 F.2d 1511, 1513 (10th Cir. 1992)). For the sake of argument, we will assume that Harrell had a constitutionally protected property interest in his continued employment with the highway patrol under Oklahoma law.

At the second step, we ask whether "the individual [was] afforded an appropriate level of process." *Riggins*, 572 F.3d at 1108 (quoting *Montgomery*, 365 F.3d at 935). Public employees with a property interest in continued employment are "entitled to oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story" prior to termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). But here, defendants argue that they did not terminate Harrell's employment—he voluntarily retired and therefore waived any right to due process.

In *Parker*, we held that if an employee "resigned of [their] own free will, even though doing so due to actions of defendants, [the employee] voluntarily relinquished [their] property interest and was not deprived of [that] property interest without due process."[3] 981 F.2d at 1162. But if the "resignation was so involuntary [that] it

---

[3] Harrell chose to retire rather than resign, but the parties agree that *Parker* applies equally in this context.

9

amounted to a constructive discharge, defendants did deprive [the employee] of [such] property interest without due process." *Id.* "A resignation will be [deemed] involuntary and coerced when the totality of the circumstances indicate[s] the employee did not have the opportunity to make a free choice." *Id.* In conducting this inquiry, we look at "the totality of the circumstances under an objective standard." *Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997). And we consider four factors: whether the employee (1) "was given some alternative to resignation"; (2) "understood the nature of the choice [they were] given"; (3) "was given a reasonable time in which to choose"; and (4) "was permitted to select the effective date of resignation." *Parker*, 981 F.2d at 1162 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988)).

Applying this framework here, we conclude that Harrell's resignation was voluntary. On the first prong, recall that following the testing controversy and its aftermath, Nelson called Harrell and gave him three options: resign, retire, or face termination. Although Harrell chose retirement, he now argues that this was a "forced choice," regardless of whether he engaged in any misconduct. Aplee. Br. 17. In other words, he asserts that he had no "alternative to resignation." *Parker*, 981 F.2d at 1162 (quoting *Stone*, 855 F.2d at 174). But Harrell's position ignores *Parker*'s instruction that "[a] choice between resignation or termination does not establish that the resignation was involuntary, unless the employer lacked good cause to believe that there were grounds for termination." *Id.* And the undisputed record, viewed objectively, establishes that they did. Harrell admitted during his deposition that he

10

provided a trooper with specific areas of study on an upcoming promotional exam but gave no such assistance to any other trooper. And there is no dispute that after German confronted Rhoades about this unfair treatment, Harrell, Rhoades, and Simpson sought to have German charged with blackmail. Prater, who declined to bring such charges, later told Nelson he believed that the blackmail allegations were unfounded; that Harrell, Rhoades, and Simpson had lied to him about Rhoades's interactions with German; and that the three officials should be investigated for their misconduct. Together, this undisputed evidence shows that defendants had good cause to believe there were grounds for termination. *See id.* (concluding that choice between resignation and termination did not render plaintiff's resignation involuntary where "[t]he evidence indicate[d] that there were adequate reasons . . . for defendants to threaten plaintiff with termination").

There is no question, at *Parker*'s second prong, that Harrell "understood the nature of the choice he was given." *Id.* (quoting *Stone*, 855 F.2d at 174). During his deposition, Harrell testified that he chose retirement as "the least intrusive of the three options that were given [to him], knowing full well that [he] had the statutory ability to go back" to his former classified position as a major, though defendants "never offered that." App. vol. 4, 1007–08. And Harrell made that choice immediately: when Nelson asked during the call if he "kn[e]w at this time what [he] would prefer to do," Harrell said without hesitation that he would retire. App. vol. 2, 480. There was no reason, then, for Nelson to give Harrell more time to reach a decision, satisfying *Parker*'s third prong. *See* 981 F.2d at 1162 (noting

11

reasonableness of time to decide). Additionally, two days after the call, Harrell sent

DPS a letter expressing his "intention to retire . . . on November 30, 2019." App. vol.

2, 489. Harrell then formally requested to begin receiving monthly retirement

benefits in December 2019, and the Oklahoma Law Enforcement Retirement System

granted that request. These undisputed facts satisfy *Parker*'s fourth prong regarding

choice of resignation date. *See* 981 F.2d at 1162. Thus, considered together, the

*Parker* factors establish that Harrell voluntarily retired from the highway patrol.[4] *See*

*id.*

---

[4] The district court concluded otherwise, despite acknowledging that "certain of the [*Parker*] factors," including the first two, "weigh[ed] in favor of" voluntariness. App. vol. 6, 1636. In reaching this conclusion, the district court made two primary observations. First, it noted that the record lacked "evidence as to why [Stitt,] the actual decision[-]maker[,] . . . decided to terminate" Harrell's employment. *Id.* But the district court did not explain why such subjective evidence would be relevant to whether Harrell's decision to retire was voluntary under *Parker*—which requires only an objective determination that good cause existed "to believe that there were grounds for termination." 981 F.2d at 1162. And Harrell does not argue on appeal that the omission of such evidence matters. Second, the district court noted (and Harrell echoes on appeal) that Nelson failed to advise Harrell "of any opportunity for a hearing" or "of any opportunity to retain employment in any capacity with the [h]ighway [p]atrol." App. vol. 6, 1636. To be sure, courts have recognized that "a resignation may be found involuntary if induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation," including "the alternative to resignation." *Stone*, 855 F.2d at 174. But again, Harrell testified that he knew "full well" that he had a statutory right to return to his former classified position as a major, App. vol. 4, 1007, and employees in classified positions may be removed only in accordance with the due-process procedures provided by Oklahoma law, *see McCrady*, 122 P.3d at 475. Thus, "in the absence of [any] reasonable reliance" on the omission, "it is simply not material" that Nelson did not inform Harrell that he could return to his former position and receive a pre-termination hearing. *Stone*, 855 F.2d at 176.

We accordingly conclude that no reasonable jury could find Harrell was constructively discharged.[5] Harrell voluntarily retired from the highway patrol, and that means "[t]here is no violation of [procedural] due process."[6] *Id.* at 1163. We thus hold that defendants are entitled to qualified immunity.

## Conclusion

Because Harrell cannot establish a procedural-due-process violation, the district court erred in denying qualified immunity to defendants. We therefore reverse and remand with directions to enter summary judgment in defendants' favor.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[5] We reach this conclusion without relying on defendants' additional argument that Harrell's conduct following his retirement—including his acceptance of hundreds of thousands of dollars in retirement benefits—"confirms his decision [to retire] was voluntary." Aplt. Br. 28.

[6] Because Harrell cannot establish a constitutional violation, we need not reach the clearly established prong of the qualified-immunity analysis.

13