**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 21 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELIZABETH MCBRIDE,

      Plaintiff - Appellant,

v.

CITGO PETROLEUM
CORPORATION, a Delaware
corporation doing business in
Oklahoma,

      Defendant - Appellee.

No. 01-5039

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 00-CV-234-H)**

---

Jean Walpole Coulter of Jean Walpole Coulter and Associates, Inc. (Brian A. Curthoys with her on the briefs), Tulsa, Oklahoma, for Plaintiff-Appellant.

Jon E. Brightmire (Kristen L. Brightmire with him on the brief), of Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **TACHA**, Chief Judge, **KELLY**, and **HARTZ**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

    Plaintiff-Appellant Elizabeth McBride appeals from the district court's

order dismissing her Americans with Disabilities Act ("ADA") claim and the

district court's order granting summary judgment in favor of Defendant-Appellee CITGO Petroleum Corporation ("CITGO") on her Family and Medical Leave Act ("FMLA") claim. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm the district court's orders.

## Background

Ms. McBride became a CITGO employee in 1985. In 1994, Ms. McBride was diagnosed with Attention Deficit Disorder; and, in 1998, she was diagnosed with severe depression. At all relevant times, she was under the care of a physician. Ms. McBride was transferred to CITGO's Health Services Department in 1994 and began reporting to James Bruce in 1998. Between the beginning of February and the end of March 1999, Mr. Bruce met with Ms. McBride four times regarding deficiencies in her work performance including failure to process invoices within thirty days, failure to report to work on time, and failure to be at her desk during working hours. On March 31, 1999, Mr. Bruce presented Ms. McBride with a letter that pointed out several areas in which her work performance had improved but reiterated the need for improvement in other areas. The letter warned that "[f]ailure to achieve immediate and sustained improvement will result in future discipline up to and including termination." Aplt. Br. at 7.

In March of 1999, Ms. McBride's depression became totally debilitating. She went to her physician on Friday, April 2. On Monday, April 5, she brought to

work a note from her doctor necessitating a medical leave of absence effective immediately. Ms. McBride returned to work on June 1, 1999.

During her medical leave, Mr. Bruce discovered several problems with Ms. McBride's job performance of which he was not previously aware. A number of unprocessed invoices were found at Ms. McBride's desk that dated back several months and had not been timely paid. Some invoices were from a vendor whose services certain employees were no longer receiving, but Ms. McBride had failed to remove the names of those employees from the list. CITGO, consequently, was being billed for services that those employees were not receiving. Aplee. Br. at 10.

Ms. McBride was not notified of the discovered work deficiencies while she was on medical leave. On the day she returned, Mr. Bruce and Ms. McBride's Human Resources Representative had a meeting with Ms. McBride in which Mr. Bruce informed her of the deficiencies discovered in her absence and asked for an explanation. When she failed to give a satisfactory answer, she was sent home with pay. On June 3, 1999, Ms. McBride was notified that she had been discharged from CITGO effective June 2, 1999.

After an unsuccessful exchange of letters between Ms. McBride's counsel and CITGO's counsel, Ms. McBride filed a formal affidavit charging discrimination based on violation of the ADA on September 29, 1999 with the

- 3 -

Equal Employment Opportunity Commission ("EEOC"). Between September 1999 and December 13, 1999, Ms. McBride's counsel claims that there were at least 14 communications with the EEOC. Aplt. Br. at 4. On December 13, 1999, the EEOC issued a letter dismissing Ms. McBride's disability discrimination charge for failure to cooperate because she had not been responsive during the previous thirty-day period. It also gave her the right to bring a disability discrimination suit in a federal court within ninety days.[1] Ms. McBride commenced this litigation on March 15, 2000. In her complaint, she asserted three claims: (1) violation of the ADA, (2) violation of the FMLA, and (3) wrongful termination under CITGO's policies and procedures.

CITGO filed a motion for partial dismissal of Ms. McBride's ADA claim asserting that she had not exhausted her administrative remedies. On October 16, 2000, the district court granted CITGO's motion. Ms. McBride then filed a motion to reconsider that the district court denied.

On December 5, 2000, CITGO filed a Motion for Summary Judgment on Ms. McBride's remaining FMLA claim. On February 2, 2001, the district court held a hearing, and, on February 21, 2001, granted CITGO's motion. The district

---

[1] See 29 C.F.R. § 1601.28(b)(3) ("Where the Commission has dismissed a charge [for failure to cooperate], it shall issue a notice of right to sue as described in § 1601.28(e) to: (i) The person claiming to be aggrieved, or, ..."); 29 C.F.R. § 1601.18(e) ("Written notice of [dismissal for failure to cooperate] shall be issued to the person claiming to be aggrieved .... Appropriate notices of right to sue shall be issued pursuant to § 1601.28.").

court applied the burden shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and determined that Ms. McBride had not established that the reasons given by CITGO for her termination were pretextual.

On March 2, 2001, Ms. McBride filed her notice of appeal. A copy of the February judgment and order and a copy of the docket sheet were attached to the notice of appeal. Ms. McBride did not file a docketing statement with the clerk of the court until April 26, 2001. No reference was made to the October dismissal until the April 26 docketing statement.

Discussion

I. Notice of Appeal

Ms. McBride's notice of appeal states that she "[does] hereby appeal to the United States District [sic] Court for the Tenth Circuit from the final judgment entered in this action on February 21, 2001."[2] Aplee. Br. at 21-22. Because the only judgment entered on February 23, 2001 was the grant of summary judgment and because no mention of the ADA claim was made in any of the other documents filed within thirty days of the February 23rd judgment, CITGO asserts that Ms. McBride failed to perfect an appeal from the dismissal of the ADA claim and is, therefore, barred from raising the issue before this court.

___

[2] The date should have been February 23, 2001. <u>See</u> Fed. R. App. P. 4(a)(1)(A); <u>supra</u> note 2.

- 5 -

Fed. R. App. P. 3(c)(1)(B) requires the notice of appeal to "designate the judgment, order, or part thereof being appealed." Although the Supreme Court held in Torres v. Oakland Scavenger Co., 487 U.S. 312, 317 (1988), that Rule 3 is a jurisdictional requirement that cannot be waived, it reaffirmed the principle "that the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on it merits." Torres, 487 U.S. at 316 (citing Foman v. Davis, 371 U.S. 178, 181 (1962)). Thus, if a would-be appellant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if his or her action is the functional equivalent of what the rule requires. Torres, 487 U.S. at 317.

Applying this rationale, we have held that a notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment. Cooper v. American Auto. Ins. Co., 978 F.2d 602, 607-09 (10th Cir. 1992) (notice of appeal that named only the final judgment was sufficient to support review of order entered more than a year earlier granting summary judgment to certain of the defendants); Bowdry v. United Airlines, Inc., 58 F.3d 1483, 1489 n.11 (10th Cir. 1995) (quotations omitted) (appellant's notice of appeal designated the denial of the motion to reconsider rather than the original order); Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1383 n.7 (10th Cir. 1994)

(quoting 16 Wright et al., Federal Practice & Procedure § 3949 at 440 (Supp. 1994)) (notice of appeal from final judgment permitted assertion of claims of error in interlocutory orders in the same case).  While none of these cases explains which orders can or must "merge" into the final judgment, Professors Wright, Miller and Cooper note that it is a general rule that all earlier interlocutory orders merge into final orders and judgments except when the final order is a dismissal for failure to prosecute.  16A Wright et al., Federal Practice & Procedure § 3949.4 at 72 (3d ed. 1999 & Supp. 2001) (citing cases).  Likewise, Professor Moore's treatise states:

> An appeal from a final judgment usually draws into question all prior non final orders and all rulings which produced the judgement. Thus, a failure of the notice of appeal to specifically refer to a preliminary or interlocutory order does not prevent the review of that order on appeal. Having appealed from the judgment, the appellant is free to attack any nonfinal order or ruling leading up to it.

20 Moore's Federal Practice ¶ 303.21[3][c][iii] (3d ed. 2001) (citing cases).

Because the dismissal of Ms. McBride's ADA claim adjudicated fewer than all the claims and liabilities of all the parties, it was not a final appealable order and would have required certification under Fed. R. Civ. P. 54(b) to be immediately appealable.  Bohn v. Park City Group, Inc., 94 F.3d 1457, 1459 (10th Cir. 1996).  As an earlier interlocutory order, the order of dismissal merged into the final judgment. The notice of appeal from the February 23, 2001 order and judgment was, therefore, sufficient to support review of the October 16, 2000

order of dismissal of the ADA claim.

II. Failure to Exhaust the ADA Claim

We review the district court's dismissal for lack of subject matter jurisdiction de novo, and the findings of jurisdictional facts for clear error. Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001). A finding of fact is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made. Nieto v. Kapoor, 268 F.3d 1208, 1217 (10th Cir. 2001).

Exhaustion of administrative remedies under the Americans with Disabilities Act, 42 U.S.C. § 12101 to § 12213, is a jurisdictional prerequisite to suit in the Tenth Circuit. See Jones v. Runyon, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996); Khader v. Aspin, 1 F.3d 968, 970-71 (10th Cir. 1993). Ms. McBride's suggestion that private sector employees do not have to exhaust is without support in this circuit. Aramburu v. Boeing Co., 112 F.3d 1398, 1409 (10th Cir. 1997) (noting in a case involving a private sector employee that the plaintiff must exhaust his administrative remedies before bring suit under Title VII); Richardson v. Albertson's, Inc., 92 F.3d 1197, 1996 WL 421977 (10th Cir. July 29, 1996) (unpublished) (finding no jurisdiction over an ADA action because the private

sector employee did not exhaust).[3]  We agree with the district court that exhaustion of administrative remedies by Ms. McBride was necessary to establish subject matter jurisdiction.

Whether Ms. McBride did exhaust her administrative remedies is a question of jurisdictional fact that we review for clear error.  The authority to dismiss for failure to cooperate is granted to the EEOC pursuant to 29 C.F.R. § 1601.18(b):

> Where the person claiming to be aggrieved fails to provide requested necessary information, fails or refuses to appear or to be available for interviews or conferences as necessary, fails or refuses to provide information requested by the Commission pursuant to § 1601.15(b), or otherwise refuses to cooperate to the extent that the Commission is unable to resolve the charge, and after due notice, the charging party has had 30 days in which to respond, the Commission may dismiss the charge.

The EEOC can "on its own initiative reconsider its decision" to dismiss.  29 C.F.R. § 1601.21(b) (made applicable to dismissals for failure to cooperate by 29 C.F.R. § 1601.18(f)).  Although the parties cannot force the EEOC to reconsider its decision, the record does not reflect that Ms. McBride requested reconsideration.[4]

---

[3] This unpublished decision is cited for its persuasive value in accordance with 10th Cir. R. 36.3(B).

[4] Unlike the regulations governing federal sector employees, which expressly allow parties to request reconsideration, no mention is made in § 1601.21 or § 1601.18 of how or if the parties can ask the EEOC to reconsider. See 29 C.F.R. § 1614.405(b) (federal sector employees "may request reconsideration within 30 days of receipt of a decision of the Commission, which the Commission in its discretion may grant….").

This absence of administrative or judicial review does not constitute a denial of due process because the EEOC's determination is not dispositive. A dismissal does not preclude the plaintiff from instituting court action because the plaintiff receives a right to sue letter despite the finding. See supra note 1; 4 Lex K. Larson, Employment Discrimination § 73.05[1] (2d ed. 2001) (discussing the portion of the reasonable cause determination regulation which the failure to cooperate regulation expressly makes applicable to itself at 29 C.F.R. § 1601.18(f)). It is for the district court to determine whether the plaintiff has complied with the regulatory requirements when the defendant raises the issue of failure to exhaust administrative remedies. No deference may be accorded the EEOC or the complaint investigator's finding with respect to the plaintiff's compliance. Wade v. Sec. of the Army, 796 F.2d 1369, 1376-77 (11th Cir. 1986). That said, because failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust. United States v. Hillcrest Health Ctr., Inc., 264 F.3d 1271, 1278 (10th Cir. 2001). An evidentiary hearing may be necessary to determine compliance or lack of it. Wade, 796 F.2d at 1377.

In this case, both parties submitted briefs and sundry documentary exhibits in support of and in opposition to CITGO's motion to dismiss for failure to

exhaust. A hearing was held by the district court on October 13, 2000. The exhibits included correspondence between the EEOC and Ms. McBride and the complaint investigator's case log noting the fact of telephone contacts with Ms. McBride's counsel. The log does not reveal the substance of those telephone calls. After reviewing the submitted materials and the arguments of the parties, the district court found that Ms. McBride had failed to exhaust her administrative remedies.

We have reviewed the record and conclude that the district court's legal conclusion of failure to exhaust is supported by an explicit finding of a failure to cooperate on Ms. McBride's part. Ms. McBride failed to meet the November 10, 1999 deadline for the return of a signed and dated enclosed copy of the Charge of Discrimination. Aplee. App. at 12. The letter instructed that any desired change should be made on a separate sheet of paper and enclosed with the signed and dated copy. Id. On November 9, 1999, Ms. McBride faxed and mailed a letter to the EEOC, id. at 44; but, the Charge of Discrimination, enclosed in the requesting letter was not signed, dated, and returned to the EEOC until December 20, 1999. Id. at 17-18, 20. The EEOC dismissed Ms. McBride's claim on December 13, 1999 - thirty-three days after the signed and dated Charge of Discrimination was due. Id. at 29. A signed and dated copy of the Perfected Charge of Discrimination was apparently never sent to the EEOC.

In addition, messages were left with Ms. McBride's counsel without response. Id. at 28; Aplt. App. Tab 3, Ex. 4. Affidavits were apparently requested by the EEOC but never provided. Aplee. App. at 44, 20; Aplt. App. at Tab 3, Ex. 4. Ms. McBride was informed on November 12, 16, 19, 30, 1999 that the change she had requested to the Charge of Discrimination needed to be discussed. The EEOC informed her that the change she had requested would be self-defeating and would result in the dismissal of her claim. She was given the opportunity to submit rebuttal or additional evidence by December 10, 1999, but did not. Aplt. App. at Tab 3, Ex. 4.

Ms. McBride argues that she did not fail to cooperate because (1) she received a letter stating that her initial charge was minimally sufficient for her claim, Aplt. Br. at 14, (2) she had multiple communications with the EEOC between the time the complaint was filed and the time it was dismissed, id., and (3) she did not receive a "final written request" for information that she failed to respond to within 30 days. Id. at 15.

(1) The fact that Ms. McBride's original charge was minimally sufficient to state a claim has no bearing on whether she cooperated. Additionally, the sentence that Ms. McBride is referring to reads in whole as: "The information that is described in the initial inquiry charge, while minimally sufficient for a charge, if changed as requested to indicating poor work performance would be self

defeating. We will dismiss the charge ... ." Aplt. App. Tab 3, Ex. 4.

(2) As to her multiple communications with the EEOC, one can communicate without being cooperative. While the court has been provided with and has reviewed the written correspondence between the EEOC and Ms. McBride, the content of the conversations between the EEOC and Ms. McBride and her counsel are not part of the record. If the content of the conversations could have demonstrated that Ms. McBride was cooperating, it was her responsibility to have requested an evidentiary hearing, rather than attempting to rely upon argument of counsel.[5] At the very least, an affidavit as to the contents of any conversations should have been provided to the district court. As the record stands, the written correspondence would support a finding of a failure to cooperate. We would also note that it is inappropriate for counsel to attempt to supplement the record by stating, without benefit of transcript or citation thereto, the substance of any such conversations. We will not consider such material.

(3) The EEOC's letter of dismissal states that Ms. McBride had more than thirty days to respond to their final written request but had failed to do so. Aplee. App. at 16. While it is true that none of the written correspondence from the EEOC indicates that it is a "final written request," the October 27, 1999 letter

---

[5] A hearing on whether Ms. McBride failed to exhaust her remedies was held by the district court. However, this court has not been provided with a transcript of that hearing. It was Ms. McBride's responsibility to have this included in her appendix. 10th Cir. R. 10.1.

- 13 -

states "If you do not return these documents within fifteen days (15) days from the date of this letter, or by close of business on 10 Nov 99, the above referenced charge will be dismissed for failure to cooperate with the Commission." Aplee. App. at 12. Given the clarity of this language, it was not necessary for the Commission to expressly state that this was a final written request for it to be one.

Based on the record as it appears before us, the district court was not clearly erroneous in finding that Ms. McBride failed to cooperate with the EEOC and, therefore, failed to exhaust her administrative remedies.

III. FMLA

We review the district court's grant of summary judgment on the FMLA claim de novo, applying the same legal standard used by the district court. Kendrick v. Penske Transp. Serv's, Inc., 220 F.3d 1220, 1225 (10th Cir. 2000). Summary judgment should be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Ms. McBride argues that the district court erred in granting summary judgment in favor of CITGO on her FMLA claim. She alleges that CITGO violated 29 U.S.C. § 2614(a)(1) by interfering with her right to be restored to her former position. Section 2614(a)(1) states:

> [A]ny eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return

from such leave-
(A) to be restored by the employer to the position of the employment held by the employee when the leave commenced; ...

29 U.S.C. § 2614(a)(1).

While Ms. McBride is correct that an employee on FMLA leave has a right to be restored, it is clear from Tenth Circuit precedent that the FMLA does not apply to the facts in this case. In Renaud v. Wyoming Dept. of Family Serv's, the plaintiff, who was on FMLA leave for treatment of alcoholism, was terminated for having been drunk while on duty. 203 F.3d 723, 732 (10th Cir. 2000). The plaintiff sued under the FMLA claiming that the defendant-employer had interfered with his FMLA rights. In affirming a judgment on a jury verdict in the defendant's favor, the Tenth Circuit held that an employee who requests or is on FMLA leave has no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request or leave than he or she did before submitting the request. Id. The court concluded that an employee may be terminated if the action would have been taken in the absence of the FMLA request or leave. Id. See also Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1261-62 (10th Cir. 1998) (affirming a grant of summary judgment in favor of the defendant in an FMLA interference claim).

Renaud establishes that the FMLA only applies when an employee is not restored for reasons related to the request for or the taking of FMLA leave. Ms.

McBride has not asserted that she was not restored because she took leave. She has only alleged that she was not restored to her former position because of work performance problems caused by her illness and she was not given an opportunity after returning from FMLA leave to prove that she could do the job when not ill. While it may be true that the problems were a result of her illness, the FMLA does not protect an employee from performance problems caused by the condition for which FMLA leave is taken, nor does it require that an employee be given an opportunity to show improved job performance when not ill. The FMLA only protects an employee's right to request and take leave while ill. Therefore, summary judgment was proper.

AFFIRMED.