**FILED**

**U.S. Bankruptcy Appellate Panel
of the Tenth Circuit**

**March 7, 2017**

**Blaine F. Bates
Clerk**

NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

|  |  |
|---|---|
| IN RE VICKI MILHOLLAND,<br><br>    Debtor. | BAP No.    CO-16-019 |
| SUMMER COLBY and JAMES COLBY,<br><br>    Plaintiffs – Appellants,<br><br>v.<br><br>VICKI MILHOLLAND,<br><br>    Defendant – Appellee. | Bankr. No.    14-21603<br>Adv. No.    14-01589<br>    Chapter    7<br><br>OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Colorado

Before **KARLIN**, Chief Judge, **JACOBVITZ**, and **MOSIER**, Bankruptcy Judges.

**KARLIN**, Chief Judge.

For more than thirty years, the Federal Rules of Civil Procedure[1] have

---

\*     This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

\*\*     After examining the briefs and appellate record, the Appellee has withdrawn her request for oral argument and the Court has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. Bankr. P. 8019(g). The case is therefore submitted without oral argument.

[1]     All references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure, unless otherwise indicated. All references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless

(continued...)

stressed the need for courts to actively manage discovery to prevent parties from using it to "wage a war of attrition or as a device to coerce a party, whether financially weak or affluent,"[2] and have emphasized the concept of proportionality.[3] Because the court did not abuse its discretion in limiting discovery here in an attempt to achieve the just, speedy, and inexpensive determination of this proceeding, as mandated by Rule 1, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

When the trial judge entered the *Order on Discovery Matters* (the "Discovery Order")[4] that is at the center of this appeal, the parties had been embroiled in several years of "scorched earth litigation."[5] Vicki Milholland (the "Debtor") first filed a small claims action in 2011 against her daughter Summer Colby, one of the plaintiffs here, then followed that action in 2012 with a replevin action to obtain possession of an "$800 pet horse" and for damages. Following the trial in the replevin action, shortly before this bankruptcy was filed, the state court ordered the Debtor to return the horse to Mrs. Colby. When the Debtor filed bankruptcy, Mrs. Colby's claim against the Debtor for damages based on emotional distress in connection with the replevin action was still pending.

Also, in 2012, Mrs. Colby and her husband/co-plaintiff, James Colby, filed two additional lawsuits against the Debtor. The first involved a dispute over

---

[1]    (...continued)
otherwise indicated. All references to "Bankruptcy Rule" or "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

[2]    Fed. R. Civ. P. 26(b) advisory committee's note to 1983 amendment. The provisions added in 1983 were meant to deal with the problem of "over-discovery," and were "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." *Id.*

[3]    *Id.*

[4]    Appellants' App. at 281.

[5]    *Tr. of April 28, 2016 Oral Ruling* at 51, *in* Appellants' App. at 590.

ownership of a barbershop and defamation claims. The second involved allegations the Debtor forged a deed transferring real property in Texas from Mrs. Colby to herself.

In August 2014, the Debtor filed a Chapter 7 bankruptcy petition. The Colbys responded by filing an adversary proceeding seeking to deny the Debtor's discharge under §§ 727(a)(3), (a)(4), and (a)(5) and seeking to deny the dischargeability of any debt the Debtor owed them under §§ 523(a)(2), (6) and (15).[6] Discovery commenced, which included, at a minimum, the Debtor sitting for a seven hour deposition, producing tax returns for the years 2011, 2012, 2013, and 2014, and producing ledgers for her barbershop business for the two years prior to bankruptcy.

Toward the end of the discovery period, in October 2015, the Colbys issued subpoenas for fifteen individuals and entities.[7] Most of the subpoenas centered around discovering information about a truck they had seen the Debtor driving immediately postpetition, because they believed she must have used her own (non-disclosed) assets to purchase the truck. Following the issuance of these

_____

[6]     The Colbys alleged the Debtor: (1) submitted false ledgers documenting her income; (2) committed false oaths by inaccurately reporting her income and expenses on schedules and failing to disclose a second barbershop business on her statement of financial affairs; (3) made false oaths regarding the addresses of creditors listed on her schedules; (4) made false oaths asserting a $1,500 invalid lien secured by a 2000 Mitsubishi Eclipse; (5) failed to disclose possession of a safe deposit box; and (6) failed to disclose her interest in a 2014 Dodge Ram truck, valued at $40,000, purchased a few days after the petition date. The § 523(a) claims were based on alleged false representations and actual fraud resulting from the facts underlying the Texas case, on willful and malicious injury resulting from the facts underlying all three lawsuits, and on their mistaken interpretation that § 523(a)(15) applies to any debt owed to a child of a debtor in connection with an order of a court.

[7]     The subpoenas were directed to Luster Storage, LLC, Canon City Police Department, Garland Lee Waldroop, Rio Grande Federal Credit Union, US Bank, Michael Milholland, Pueblo Bank & Trust, Christy Waldroop, Comnity Bank, David Solon Nissan, LLC, Wal-Mart Money Card, Frank Squire, Green Dot Corporation, Colorado Department of Motor Vehicles, and Perkins Motor Company. Appellants' App. at 75-113, 142-63, 233-45.

subpoenas, the parties engaged in multiple discovery disputes:

(1) On October 19, 2015, the Colbys filed a *Motion to Compel Answers to Admissions, Interrogatories, & Production of Documents*, requesting, in part, the Debtor produce bank statements from August 2011-August 2015;[8]

(2) On October 27, 2015, the Debtor filed a *Limited Motion to Quash Subpoenas Duces Tecum in Adversary Proceeding and for a Protective Order*, objecting only to the extent they sought postpetition information and seeking a protective order prohibiting production of postpetition documents and financial records of third parties;[9]

(3) On October 29, 2015, the Debtor filed her *Response to Motion to Compel Answers to Admissions, Interrogatories & Production of Documents*, arguing she had produced all requested bank statements actually in her possession, but objecting to paying the cost to obtain the missing prepetition bank statements.[10] She did not oppose the Colbys' attempt to obtain the other prepetition statements directly from the bank;

(4) On October 30, 2015, the Colbys responded to the Debtor's motion to quash, arguing the requested information was "proportional to the needs of the case, considering the importance of the issues at stake in the action (such as the likelihood the debtor purchase[d] a brand new vehicle free and clear less than 48 hours after filing bankruptcy and registered it in the name of her unemployed daughter)"[11] and specifically addressed the subpoena issued to Christy Waldroop (another daughter of the Debtor). They argued that they sought information "directly tie[d] to the purchase of [the truck]" that would lead to admissible evidence including (1) "the strong likelihood that [the Debtor], whom [sic] has been driving this vehicle, actually purchased this vehicle post-petition and simply used her daughter to conceal the acquisition;" (2) the Debtor's failure to disclose accounts; and (3)Waldroop's obtaining storage units in her name at the same time the Debtor was closing her own, suggested the Debtor was secreting property of the estate.[12]

(5) On November 2, 2015, Waldroop filed her own *Motion to Quash Subpoenas Duces Tecum in Adversary Proceeding and for Protective Order*,[13] arguing that "[n]one of the information [sought] is that which is allowed or anticipated by the rules of discovery" and that the information

---

[8]     Appellants' App. at 115.

[9]     *Limited Motion to Quash Subpoenas Duces Tecum in Adversary Proceeding and for Protective Order* at 6, *in* Appellants' App. at 170.

[10]     Appellants' App. at 187.

[11]     *Response and Objection to Motion to Quash Subpoenas* at 6, *in* Appellants' App. at 210.

[12]     *Id*. at 4, *in* Appellants' App. at 208.

[13]     Appellants' App. at 247.

sought from her and third parties was private information requested only to embarrass, harass, or inconvenience.[14]

The court set a hearing on these discovery motions, and all parties received notice that the court would address these issues.[15]

At the hearing, the Colbys admitted that the disputes between the parties had become so bitter that they had even set up a publicly available website in the Debtor's name listing her alleged fourteen divorces and forty lawsuits in which they claim she was a party. The website they created also listed the Debtor's thirteen alleged aliases, included a copy of her bankruptcy schedules, and even included several pictures of the Debtor. In response to Mr. Colby's description of this website, and before ruling on the discovery motions, the court noted "this creates an inference - - if you are in this kind of scorched earth litigation with your wife's mother, you are seeking to publicly humiliate her, defame her, to add another dimension to this litigation war which I've never seen before."[16]

In deciding these discovery disputes, the court also had before it all the pleadings filed in the case, which contained caustic accusations between the parties. The court was also aware that the Debtor had already produced numerous documents to the Colbys and had sat for a deposition in this case and in at least one prior case. In addition, this same trial judge had handled a prior bankruptcy case filed by Mrs. Colby (then known as Summer Rain Kidd)—Case 12-36129-SBB—where she and the Debtor were embroiled in litigation for almost two years, as well as a bankruptcy filed by Mr. Colby.[17]

At the conclusion of oral argument regarding the discovery disputes, the

---

[14]  Appellants' App. at 248.

[15]  *Notice of Oral Argument in* Appellants' App. at 254.

[16]  *Tr. of Nov. 9, 2015 Hearing* at 24, *in* Appellants' App. at 479.

[17]  Appellants' Br. 47; Bankruptcy Case 12-36129 Docket, *in* Appellants' App. at 675-92.

court issued findings of fact and conclusions of law. Although it quashed most of the subpoenas, it did find that the purchase of the new truck was a "legitimate area of inquiry to which answers should be given."[18] It allowed some discovery so the Colbys could attempt to prove their allegations that the Debtor had purchased the truck with prepetition assets that she had failed to disclose.

The court also granted Waldroop's motion to quash without prejudice, noting the Colbys had failed to demonstrate cause to inquire into the private financial life or activities of this non-party. It noted that the Colbys needed to show "good cause and an ability to demonstrate a need to acquire that information" to obtain the subpoena.[19]

Even though the court could see that the case had become "a discovery contest that [was] out of control,"[20] as the Debtor had already been subject to a seven hour deposition and responded to considerable written discovery, including producing bank and tax records, the court nevertheless allowed the Colbys to obtain additional documents. The court ordered the Debtor to provide bank records for 2013-2014 and up to ninety days postpetition so they could see if she had failed to disclose assets with which she could have purchased the truck. The court also allowed the Colbys to further question the Debtor regarding those bank statements, her assets, and her purchases and expenditures for 2013-2014 (and for ninety days after the petition date). But the court struck the remaining subpoenas as "overly broad, too burdensome, harassing and inappropriate for this litigation."[21]

The Colbys moved for reconsideration of that order, arguing the court

---

[18]    *Tr. of Nov. 9, 2015 Hearing* at 34, *in* Appellants' App. at 489.

[19]    *Id.* at 57, *in* Appellants' App. at 512.

[20]    Discovery Order at 2, *in* Appellants' App. at 282.

[21]    Discovery Order at 2-3, *in* Appellants' App. at 282-83.

should not have struck subpoenas that the Debtor had not opposed (to the extent they sought information predating the bankruptcy petition date). They also argued that they had been denied the opportunity to respond to Waldroop's motion to quash.[22] The Colbys attached to their motion to reconsider a Vehicle Master Search record from the Colorado motor vehicle department indicating that while the new truck was titled in the names of Waldroop and her father—i.e., not in the Debtor's name, one of the addresses on the vehicle title registration belonged to the Debtor.

The Debtor opposed the motion to reconsider, arguing that the notation of her address as the place for delivery of the certificate of title did not prove she had used estate assets to purchase the truck. The Debtor also indicated that she had provided bank statements to the Colbys and agreed to an additional one-hour deposition so they could inquire about those bank statements. At a telephonic hearing on the motion to reconsider, the court denied the motion, making oral findings of fact and conclusions of law that are not part of the record on appeal.

A few months later, the court conducted a two-day trial. At the close of the Colbys' case, the Debtor moved for a judgment pursuant to Rule 52(c), made applicable to bankruptcy cases by Bankruptcy Rule 7052. The court ultimately granted judgment on partial findings after taking the motion under advisement, finding that the Colbys' case failed "for a complete lack of proof, and a complete lack of any documents to support the claims."[23] The Colbys filed a timely appeal,

---

[22]　As of the date of the discovery hearing, the deadline to respond to Waldroop's motion to quash had not expired, and the Colbys allege that the court provided them no opportunity to respond to Waldroop's oral argument prior to entering the Discovery Order.

[23]　Oral Ruling *Order* at 2, *in* Appellants' App. at 366. The Colbys also moved to reconsider this order; it was denied and is not the subject of this appeal.

appealing only the Discovery Order that had quashed most of the subpoenas.[24]

## II. STANDARD OF REVIEW

Orders quashing a subpoena and limiting discovery are reviewed for an abuse of discretion.[25]

## III. DISCUSSION

### A. The court did not abuse its discretion in *sua sponte* quashing subpoenas to which there had been no objection.

The Colbys argue that the court abused its discretion in two ways. First, they contend the court erred when it quashed subpoenas issued to third parties when those third parties had not objected. Second, they argue the court erred in quashing some subpoenas when the Debtor herself only objected to the extent the subpoenas sought postpetition information.

Discovery against nonparties is obtained by subpoena, and subpoenas are governed by Rule 45 (made applicable to bankruptcy cases under Bankruptcy Rule 9016). Whether discovery should be allowed via a subpoena is analyzed under the same standard as any other discovery under Rule 26 (made applicable to bankruptcy cases under Bankruptcy Rule 7026). "All discovery, including that sought through a subpoena, is subject to [Rule 26(b)(2)(C)'s] limits."[26]

---

[24] An interlocutory order merges into the final judgment and becomes appealable along with the final judgment and an "appellant is free to attack any nonfinal order or ruling leading up to it." *Montgomery v. City of Ardmore*, 365 F.3d 926, 934 (10th Cir. 2004) (quoting *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002)).

[25] *Dill v. City of Edmond*, 155 F.3d 1193, 1210 (10th Cir. 1998) (holding order quashing subpoena reviewed for abuse of discretion); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (concluding whether evidence is relevant is a matter within discretion of trial court); *Gulley v. Orr*, 905 F.2d 1383, 1386 (10th Cir. 1990) (holding order on motion to quash is left to trial court's discretion).

[26] *Hunsaker v. Proctor & Gamble Mfg. Co.*, No. 09–2666–KHV, 2010 WL 5463244, at *4 (D. Kan. Dec. 29, 2010) (citing Fed. R. Civ. P. 26(b)(1)); *see also Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003)

(continued...)

Furthermore, the court may issue any order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[27] and must limit the frequency or extent of discovery—even when a party is seeking relevant information—if the discovery sought is unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.[28]

Before quashing most of the subpoenas, the court noted that they were generally "overbroad, too burdensome, harassing and inappropriate for the

[27] Fed. R. Civ. P. 26(c)(1) (2014). Although revisions to Rule 26 became effective December 1, 2015, shortly after the order at issue here was entered, we rely on the version in effect when the Discovery Order was issued.

[28] Fed. R. Civ. P. 26(b)(2)(C) (2014). We again note that after the appealed order was entered, Rule 26 was revised to move the discussion of proportionality from (b)(2)(C)(iii) to subsection (b)(1). The 2015 advisory committee notes regarding Rule 26 also emphasize that the 2015 amendment, admittedly not in effect when the trial court quashed these subpoenas, "**again** reflects the need for continuing and close judicial involvement in the cases that do not yield readily to the ideal of effective party management. It is expected that discovery will be effectively managed by the parties in many cases. But there will be important occasions for judicial management, both when the parties are legitimately unable to resolve important differences and when the parties fall short of effective, cooperative management on their own." Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment (emphasis added). Thus, because of the use of the word "again" in the Rule 26(b) advisory committee's notes to the 2015 amendment, it is clear that Rule 26 already included active judicial management as an integral part of the trial judge's responsibilities at the time the order was entered.

character, nature and extent of this particular litigation."[29] The court noted that the case had become "an ongoing war between the parties," was "arguably out of control, has been, still is and is likely to continue,"[30] and was a "novel and bitter and continuing litigation battle" with the discovery dispute being only "one piece of a multifaceted seemingly interminable war over litigation and over assets."[31] The court also found the bank statements predating the bankruptcy filing by more than two years prior were irrelevant and immaterial.[32]

A review of each quashed subpoena, read in context with the litigation history between these parties, demonstrates that the court did not abuse its discretion in limiting discovery in each instance:

**Rio Grande Federal Credit Union Subpoena**

The court quashed the subpoena directed to the Rio Grande Federal Credit Union that requested vehicle loan statements for a 2008 Chevrolet Equinox or any bank accounts from 2010 to present. The Colbys generally argue on appeal that they needed this evidence to demonstrate their claim that the Debtor had undervalued the car in her bankruptcy schedules.[33] But they do not contest that she listed the car in her schedules, that she sold it after it ceased being estate property, and after paying the balance due on the loan against it, used the small remaining surplus to pay a debt she had been directed to pay to a former spouse.

---

[29]     *Tr. of Nov. 9, 2015 Hearing* at 57, *in* Appellant's App. at 512.

[30]     *Id.* at 54, *in* Appellants' App. at 509.

[31]     *Id.* at 53, *in* Appellants' App. at 508.

[32]     *Id.* at 55, *in* Appellants' App. at 510.

[33]     Although not expressly stated by the Colbys, it appears they were attempting to demonstrate that the Equinox value of $6,900 the Debtor listed in her schedules was a false statement in support of their § 727(a)(4)(A) claim. At the hearing on the discovery motion, the Colbys note that the Debtor identified the Equinox on her Schedule B valued at $6,900 but sold it for $4,000, with $3,200 of the proceeds applied to the loan held by the Rio Grande Federal Credit Union. *Tr. of Nov. 9, 2015 Hearing* at 9, *in* Appellants' App. at 464.

Nor do they suggest the sale was improper.[34] The court acted within its sound discretion in generally holding that the requested discovery on this small asset that had been fully accounted for was too burdensome, unjustified, and inappropriate for the character, nature and extent of this litigation.[35] Further, the record reveals that the same information was obtainable (and obtained) from another source.[36]

### Pueblo Bank & Trust and US Bank Subpoenas

The court partially quashed subpoenas directed to Pueblo Bank & Trust and US Bank. The subpoenas sought bank statements from August 2010 up to the ninety days following the petition date. The court quashed only that part seeking the 2010 through 2012 statements. The Colbys argue that the court abused its discretion because the earlier years' statements might contain evidence of the source of the funds that were used to purchase the truck that Waldroop told the court her father bought for her in late August 2014. Our review of the full record disclosed sufficient evidence in support of the court's determination that the older bank statements were irrelevant and unnecessary under the circumstances. We do not find any abuse of discretion in limiting discovery in this instance.

### Luster Storage Subpoena

The court quashed a subpoena directed to Luster Storage requesting all storage agreements from July 2011, the ledger of payments made by the Debtor on

---

[34] Prior to the discovery hearing, the Colbys argued that the Debtor "covertly" disposed of the Equinox and sought leave to amend the Complaint to add additional counts. The court denied this request; that decision was not appealed. *Response and Objection to Motion to Quash Subpoenas* at 3, *in* Appellants' App. at 207.

[35] *Tr. of Nov. 9, 2015 Hearing* at 54-55, *in* Appellants' App. at 509-10.

[36] The Colbys acknowledge that Debtor's ex-husband, under subpoena, informed them of the sale of the Equinox with the application of proceeds paid towards the credit union loan. *Tr. of Nov. 9, 2015 Hearing* at 9, *in* Appellants' App. at 464.

the storage unit, the date the storage unit was closed, whether there was any property left in the unit, and what consideration it had received if the contents had been auctioned. The Colbys argue that this subpoena sought relevant information because after they evicted the Debtor in October 2011, she removed property of the Colbys and placed it in a storage unit. The Colbys argued that *if* the Debtor "obtained a massive unit immediately upon . . . filing bankruptcy" that might indicate that she was concealing assets.[37] They also argue they knew the Debtor had taken the Colbys' property to a storage unit at Luster Storage.

Our review of the entire record contains no factual basis to support the Colbys' claim that the Debtor converted the Colbys' personal property and nothing to establish the relevance of this discovery to this claim.[38] Accordingly, we do not find an abuse of discretion by the court in limiting discovery in this instance.

**Garland Lee Waldroop Subpoena**

The court quashed a subpoena directed to Garland Waldroop, but the Colbys subsequently withdrew that subpoena.[39] Because this issue is moot, we find no abuse of discretion by the court in quashing that subpoena.

**Canon City Police Department Subpoena**

The court quashed a subpoena directed to the Canon City Police Department requesting documents relating to criminal charges filed by Mrs. Colby against the Debtor in 2011representing yet another example of the "out of

---

[37]      Ex. B *Response to Plaintiff's First Request for Production of Documents, Request for Admissions and Interrogatories* at 2, *in* Appellants' App. at 134.

[38]      When the court made this decision, it knew that the Debtor had already disclosed in prior discovery responses that she had only one storage unit with Canon Mini Storage from February 2006 - February 2015 and that it contained nominal personal property. *Response to Plaintiff's First Request for Production of Documents, Request for Admissions and Interrogatories* at 6-7, *in* Appellants' App. at 127-28.

[39]      *Response and Objection to Motion to Quash Subpoenas Request for Expedited Consideration* at 8, *in* Appellants' App. at 212.

control" conflicts between these family members. The Colbys did not identify the specific documents requested in the subpoena. On appeal, the Colbys now identify "one specific police report underlying [their] §523 claims, where . . . [the Debtor] gave the Police Department a copy of a forged document that she refused to provide in discovery in the underlying state litigation cases."[40] The Colbys argue the subpoenaed record would have "demonstrate[ed] that the debtor was attempting to forge a bill of sale for the horse"[41] and "coupled with evidence of other document alteration" would have shown specific intent to cause a malicious injury.[42]

Neither the Complaint nor the record on appeal contain allegations or evidence regarding document alteration in connection with the horse, and the Colbys fail in this appeal to identify or argue specifically regarding the alleged evidence of "other document alteration."[43] Our review of the record reveals sufficient support for the court's decision that the requested discovery was inappropriate, harassing, and unjustified.[44] Accordingly, we do not find an abuse of discretion by the court in quashing this subpoena.

**Michael Milholland Subpoena**

The court quashed a subpoena directed to Michael Milholland, the Debtor's former husband. The Colbys acknowledge in their brief that this subpoena was "directed to produce essentially the same information as from Rio Grande Federal Credit Union, concerning a loan on a vehicle that [the Debtor]was obligated to

---

[40] Appellants' Br. 11.

[41] Appellants' Reply Br. 17.

[42] *Id.*

[43] *Id.*

[44] *Tr. of Nov. 9, 2015 Hearing* at 54-55, *in* Appellants' App. at 509-10.

-13-

pay under a divorce decree"—the Equinox.[45] Our review of the record indicates that because Mr. Milholland responded to the subpoena prior to the Discovery Order,[46] the issue whether the court abused its discretion in quashing that subpoena is moot.

**Frank Squire Subpoena**

The court quashed a subpoena seeking the deposition of Frank Squire—a 94 year old man who had apparently given a character reference for the Debtor in the 2012 litigation brought by Mrs. Colby against the Debtor. Apparently, the Debtor had listed Mr. Squire as a potential creditor in her bankruptcy schedules, and the Colbys allege that the Debtor made a false oath by knowingly and fraudulently falsifying Mr. Squire's address in those schedules.[47] The Colbys argue now that Mr. Squire's deposition "would have evidenced the creditor to be wholly unaware of the [bankruptcy] action and the debtor's testimony non-credible."[48] Our review of the record reveals that sufficient evidence supports the court's determination that the discovery request was burdensome and disproportionate. Accordingly, we do not find an abuse of discretion by the court in quashing the deposition subpoena for Mr. Squire.

**David Nissan Solan, LLC Subpoena**

David Nissan Solan, LLC responded to the subpoena, notwithstanding the fact it was ultimately quashed. As a result, whether the court abused its discretion

---

[45]    Appellants' Br. 12.

[46]    *Tr. of Nov. 9, 2015 Hearing* at 9, *in* Appellants' App. at 464. Mr. Milholland disclosed that the vehicle had been sold and the proceeds were used to pay the Rio Grande Federal Credit Union.

[47]    Complaint at 4, *in* Appellants' App. at 31.

[48]    Appellants' Reply Br. 16. Following the trial (the transcript of which was not provided as part of the record on appeal), the court found that no party disputed that Mr. Squire was aware of the bankruptcy regardless what address the Debtor had used.

in limiting this discovery is moot.[49]

**Comnity Bank, Walmart Money Card, and Green Dot Corporation Subpoenas**

The court quashed subpoenas directed to Comnity Bank, Walmart Money Card, and Green Dot Corporation. The Colbys now argue that this discovery might have allowed them to identify prepaid cards the Debtor might have purchased prepetition that she then failed to disclose as assets in her bankruptcy schedules. But the Complaint fails to allege the Debtor omitted scheduling prepaid cards, and there is nothing in the record on appeal that indicates the Debtor failed to disclose prepaid cards as assets. As is true with most of the subpoenas, this appears to be part of a widespread fishing expedition, and our review of the record reveals sufficient support for the court's determination that this discovery request was disproportionate, unjustified, and overly burdensome. Accordingly, we do not find an abuse of discretion by the court in limiting this discovery.

**Colorado Department of Motor Vehicles Subpoena**

The court quashed a subpoena directed to the Colorado Department of Motor Vehicles, which, the Colbys acknowledge in their brief, sought "title information"[50] for the truck. Because the Colbys admitted, in their motion to reconsider the Discovery Order, that they received this very title information when they returned home from the discovery hearing,[51] whether the court abused its discretion in limiting this discovery is moot.

---

[49]  *Letter from Jeremy Hamm, David Solon Nissan, LLC, to the Colbys (Oct. 28, 2015) in* Appellants' App. at 214.

[50]  Appellant's Br. at 41.

[51]  *Motion for Relief or Reconsideration of Orders Entered November 9, 2015* at 4, *in* Appellants' App. at 288.

-15-

**Perkins Motor Company Subpoena**

The court quashed a subpoena directed to Perkins Motor Company requesting all documents related to the purchase of the truck. Waldroop, who claimed she owned the truck—not the Debtor—argued that this information was private information that had no relevance to the Debtor. The Colbys now argue that the information sought was not Waldroops' personal information and its relevance to their claims unquestionable. Our review of the full record disclosed sufficient evidence in support of the court's determination that "cause has not been shown to drill down into [Waldroop's] private financial life."[52] We do not find any abuse of discretion in limiting discovery in this instance.

Finally, while we are sympathetic to the fact that the Colbys were not advised in advance that even subpoenas to which there had been no objection would be the subject of the discovery hearing and court ruling, we note that when the party asserting an issue fails to provide a record sufficient to consider an issue, we may decline to consider it.[53] The Colbys ultimately did have the opportunity to argue this point—that the court should not have *sua sponte* quashed subpoenas the Debtor had not objected to—in their motion to reconsider the Discovery Order. Unfortunately, because they failed to provide this Court with the transcript of the hearing where the court orally issued its decision on that motion to reconsider, we are both unable to determine whether the court expressly addressed that issue or to review the court's reasoning in rejecting the argument. So while this Court need not remedy any failure by a party to designate an adequate record,[54] we have nevertheless considered this issue based on the limited record before us, and hold that the court did not abuse its discretion in quashing

---

[52]     *Tr. of Nov. 9, 2015 Hearing* at 57, *in* Appellants' App. at 512.

[53]     10th Cir. BAP L.R. 8009-3.

[54]     *Id*.

the subpoenas in each instance.

**B. The court did not abuse its discretion in quashing the Waldroop Subpoena.**

The Colbys also argue the court abused its discretion granting Waldroop's motion to quash when they were given no opportunity to respond in writing to such motion.[55] But the record shows that the Colbys were, in fact, notified that this issue would be one of many issues to be addressed at the hearing set for the following week, and that they did, in fact, have an opportunity to and did orally respond at the hearing on the Waldroop subpoena.[56] Accordingly, we hold that the court did not abuse its discretion in granting Waldroop's motion to quash.

**IV. CONCLUSION**

Courts are directed, on motion or on their own, to consider the needs of every case, the amount in controversy, the parties' resources and the importance of the issues at stake in resolving discovery issues. And that is exactly what this court did here. It had managed extensive and bitter litigation between these family members for almost three years at the point it decided to quash the subpoenas that are the subject of this appeal. In light of that history, we find the court did not abuse its discretion in limiting discovery. The court's decision is AFFIRMED.

---

[55]     *Motion for Relief or Reconsideration of Orders Entered November 9, 2015* at 2, *in* Appellants' App. at 286.

[56]     *Notice of Oral Argument* in Appellants' App. at 254; *Tr. of Nov. 9, 2015 Hearing* at 48-49, *in* Appellants' App. at 503-04.